**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE FORTUNE SOCIETY, INC., on behalf of itself and its participants, and MICHAEL CLARK, on behalf of himself and all others similarly situated, | Case No. 19-cv-05961-RA |
| Plaintiffs, | CLASS ACTION |
| v. | |
| MACY'S, INC., MACY'S RETAIL HOLDINGS, INC. d/b/a MACY'S, and MACY'S CORPORATE SERVICES, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, AND APPROVAL OF PLAINTIFFS' <u>PROPOSED NOTICE OF SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ............................................................................................................................... 2

I.     Investigation and Early Litigation ....................................................................................... 2

II.    Settlement Negotiations ...................................................................................................... 4

SUMMARY OF PROPOSED SETTLEMENT ................................................................................ 5

I.     Monetary Settlement Terms ................................................................................................ 5

II.    Programmatic Relief .......................................................................................................... 5

III.   Class Definition ................................................................................................................. 6

IV.   Releases for Proposed Class Members .............................................................................. 6

V.    Attorneys' Fees and Costs .................................................................................................. 7

VI.   Settlement Administration .................................................................................................. 7

ARGUMENT .................................................................................................................................... 8

I.     Preliminary Approval of the Class Action Settlement Is Appropriate ............................... 8

      A.    Litigation Would Be Complex, Costly, and Long (Factor 1). ............................. 10

      B.    The Court Cannot Assess the Reaction of the Class Until After Notice Issues
           (Factor 2). ........................................................................................................... 12

      C.    The Parties Have Exchanged Sufficient Relevant Information to Evaluate the
           Claims and Defenses (Factor 3). ....................................................................... 12

      D.    The Risk of Establishing Liability and Damages for the Class Through Trial
           Favors Approval (Factors 4 and 5). .................................................................... 13

      E.    The Risk of Obtaining Class Certification Favors Approval (Factor 6). .............. 14

      F.    There Is Risk That Defendants Cannot Withstand a Greater
           Judgment (Factor 7). .......................................................................................... 15

      G.    The Settlement Is Substantial, Even in Light of the Best Possible Recovery and
           the Attendant Risks of Litigation (Factors 8 and 9). ........................................... 16

II.    Conditional Certification of the Class Is Appropriate. ...................................................... 18

| | | |
|---|---|---|
| A. | Numerosity Is Satisfied. | 18 |
| B. | Commonality Is Satisfied. | 18 |
| C. | Typicality Is Satisfied. | 19 |
| D. | Adequacy of the Named Plaintiff Is Satisfied. | 20 |
| E. | Certification Is Proper Under Rule 23(b)(3). | 20 |
| | 1. Common Questions Predominate. | 21 |
| | 2. A Class Action Is a Superior Mechanism. | 21 |
| III. | Plaintiffs' Counsel Should Be Appointed as Class Counsel. | 22 |
| IV. | The Proposed Notice and Distribution Process Are Appropriate. | 24 |
| | CONCLUSION | 25 |

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................20, 22

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................10, 12, 16

*Capsolas v. Pasta Res., Inc.*,
   No. 10 Civ. 5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012)....................20, 22

*In re Cendant Corp. Litig.*,
   264 F.3d 201, 235 (3d Cir. 2001)........................................................................12

*Chen-Oster v. Goldman, Sachs & Co.*,
   325 F.R.D. 55 (S.D.N.Y. 2018) ..........................................................................21

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................10

*Clark v. Ecolab, Inc.*,
   No. 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, (S.D.N.Y. Nov. 27,
   2009) ......................................................................................................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)..................................................................................18

*Delmoral v. Credit Prot. Ass'n, LP*,
   No. 13 Civ. 242, 2015 WL 5793311 (E.D.N.Y. Sept. 30, 2015)........................15

*Domonoske v. Bank of Am., N.A.*,
   790 F. Supp. 2d 466 (W.D. Va. 2011) ...............................................................17

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285, 291 (2d Cir. 1992)........................................................................19

*Duling v. Gristede's Operating Corp.*,
   267 F.R.D. 86 (S.D.N.Y. 2010) ..........................................................................19

*Dziennik v. Sealift, Inc.*,
   No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007)........................20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................9

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................19

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)....................................................................................................18

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)......................................................................................21

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014)..................................................................11, 23

*Int'l Bhd of Teamsters v. United States*,
    431 U.S. 324 (1977)....................................................................................................14

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969).............................................................................13

*Karic v. Major Auto. Cos., Inc.*,
    No. 09 Civ. 5708, 2016 WL 1745037 (E.D.N.Y. Apr. 27, 2016)............................12

*Keels v. Geo Grp., Inc.*,
    No. 15 Civ. 6261, 2017 WL 4477000 (E.D.N.Y. Oct. 1 2017) ...............................24

*Kelly v. Brooklyn Events Ctr., LLC et al*,
    No. 17 Civ. 4600, 2019 WL 4316125 (E.D.N.Y. Sept. 10, 2019)....................19, 24

*Little v. Washington Metro. Area Transit Auth.*,
    249 F. Supp. 3d 394 (D.D.C. 2017)...........................................................................23

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 14 Civ. 238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ..............................17

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).......................................................................................19

*Martens v. Smith Barney, Inc.*,
    181 F.R.D. 243, 263 (S.D.N.Y. 1998) ................................................................13, 20

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1995)..........................................................................................8

*McBean v. City of New York*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ...............................................................................21

*Millien v. Madison Square Garden Co.*,
    No. 17 Civ. 4000, 2020 WL 4572678 (S.D.N.Y. Aug. 7, 2020) .............................23

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012).........................................................................13

*In re PaineWebber Ltd. P'ships Litig.*,
    147 F.3d 132, 138 (2d Cir. 1998)......................................................................................8

*Pickett v. SIMOS Insourcing Sols., Corp.*,
    No. 17 Civ. 1013, 2017 WL 3444755 (N.D. Ill. Aug. 10, 2017)............................................24

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010)..........................................24

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)...........................................................................................19

*Syed v. M-I LLC*,
    No. 14 Civ. 742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016)..............................................17

*Times v. Target Corp.*,
    No. 18 Civ. 2993, 2019 WL 5616867 (S.D.N.Y. Oct. 29, 2019) ..............................19, 21, 23

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2010 WL 2572937 (S.D.N.Y. June 1, 2010)..............................................8

*Toure v. Cent. Parking Sys. of N.Y.*,
    No. 05 Civ. 5237, 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007)..........................................20

*In re Traffic Exec. Ass'n E. R.R.*,
    627 F.2d 631 (2d Cir. 1980)............................................................................................9

*Tyson Foods Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016).................................................................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001))..........................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)...........................................................................................8, 9

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).......................................................................................12, 13

*White v. First Am. Registry, Inc.*,
    No. 04 Civ. 1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) ............................................17

*Willix v. Healthfirst, Inc.*,
    No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)............................................9

**Other Authorities**

Dan Primack, Macy's dodges bankruptcy by securing $4.5 billion in financing,
Axios (June 10, 2020), https://www.axios.com/macys-financing-bankruptcy-
9e973693-6cd9-4ad7-bf26-0914dbaeb7fc.html..................................................16

Doug Whiteman, These Chains Are Permanently Closing the Most Stores in
2020, MoneyWise (Aug. 12, 2020), https://moneywise.com/a/chains-closing-
the-most-stores-in-2020 ...................................................................................15

Federal Judicial Center, *Illustrative Forms of Class Action Notices: Notice
Checklist and Plain Language Guide*,
https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-
notice-checklist-and-plain-language-guide..........................................................24

Fed. R. Civ. P. 23 ......................................................................................................23

Fed. R. Civ. P. 23(a)(4) .............................................................................................20

Fed. R. Civ. P. 23(b)(3)........................................................................................20, 22

Fed. R. Civ. P. 23(c)(2)(b) ........................................................................................24

Fed. R. Civ. P. 23(g)(1)(A) .......................................................................................23

Fed. R. Civ. P. 23(g)(1)(B) .......................................................................................23

Herbert B. Newberg & Alba Conte, 4 *Newberg on Class Actions* (5th ed. 2017)....................8, 9

Jordan Valinsky, *Big Chains Filed for Bankruptcy and Closed Stores Every Week
in July. Here Are 9 of Them,* CNN Business (July 27, 2020, 9:00 A.M.),
https://www.cnn.com/2020/07/25/business/july-bankruptcies-
coronavirus/index.html. ...................................................................................16

Manual for Complex Litigation (Third) (1995) .........................................................9

Manual for Complex Litigation (Fourth) (2004). ......................................................9

**INTRODUCTION**

Plaintiffs Michael Clark, on behalf of himself and similarly situated job applicants, and

The Fortune Society, Inc. ("Fortune"), an organization that supports the successful reentry of

formerly incarcerated individuals, seek approval of a proposed settlement with Defendants

Macy's, Inc., Macy's Retail Holdings, Inc., and Macy's Corporate Services, Inc. ("Defendants"

or "Macy's"), one of the largest retail corporations in the United States.[1]  The parties have

reached a proposed settlement after extensive investigation, a contested motion to dismiss,

informal exchange of data and information, and negotiations assisted by a private mediator.

Plaintiffs now request the Court's preliminary approval of the settlement, along with conditional

certification of the Settlement Class, appointment of Class Counsel, and approval of Plaintiffs'

proposed Notice.[2]

This settlement provides significant benefits to Class Members while ensuring a fair

criminal history screening process going forward for the many future applicants in New York

City who will seek employment with Macy's.  It provides for independent review of Macy's

background check processes, an application process that is compliant with the New York City

Fair Chance Act, and cash payments to all Class Members.

The proposed settlement is based on a careful analysis of policy documents, training

materials, and personnel and applicant data to evaluate the strengths and potential weaknesses of

Plaintiffs' claims.  The Parties diligently negotiated and mediated the dispute, and the proposed

settlement agreement is the product of months of arm's-length, good faith negotiations between

---

[1]      The Parties' proposed Settlement Agreement and Release ("Settlement Agreement") is
attached as Exhibit A to the Declaration of Ossai Miazad ("Miazad Declaration").  All
capitalized terms herein are defined in the settlement agreement. *See* Miazad Decl., Ex. A § 1.
[2]      Plaintiffs' proposed Notice is attached as Exhibit B to the Miazad Declaration.

experienced counsel, with the assistance of a well-respected mediator.  If approved, the settlement will afford significant relief to Class Members, by providing (1) monetary compensation pursuant to an allocation formula from a Gross Settlement Fund of $1,800,000, and (2) substantial programmatic relief, overseen by a neutral third-party Consultant, to remedy the hiring practices at issue in this litigation.

As set forth below, the proposed settlement is fair, reasonable, and adequate, and satisfies all criteria for preliminary approval under applicable federal law.  Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement on the terms set forth in the settlement agreement; (2) conditionally certify the proposed Settlement Class, for settlement purposes only, under Federal Rule of Civil Procedure ("Rule") 23(b)(3); (3) appoint Outten & Golden LLP ("O&G"), the NAACP Legal Defense and Educational Fund, Inc. ("LDF"), and Youth Represent ("YR") as Class Counsel; (4) approve the proposed Notice and direct its distribution; and (5) schedule a Fairness Hearing for a date ninety (90) calendar days after the Court's Preliminary Approval Order.

## **BACKGROUND**

### I.      **Investigation and Early Litigation**

On June 26, 2019, Plaintiff Fortune and Jenetta Rolfer filed a class action complaint, alleging that Macy's, Inc. violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL") by unlawfully using applicants' and employees' criminal histories to screen and exclude them from obtaining and/or continuing employment at Macy's; by failing to weigh the factors outlined in Article 23-A of the Correction Law, in violation of N.Y.C. Admin Code § 8-107(10) and New York State Correction Law § 753; and by seeking New York City job applicants' consent to a criminal background check

2

prior to extending a conditional offer of employment, in violation of the Fair Chance Act, N.Y.C. Admin. Code § 8-107(11-a)(3).  *See* ECF No. 1.  On July 19, 2019, Defendant Macy's, Inc. moved to dismiss the original complaint, in part, for lack of jurisdiction pursuant to Rule 12(b)(2).  ECF No. 16.  Plaintiffs filed their opposition to the motion and a First Amended Complaint, as of right, on August 9, 2019, adding Macy's Retail Holdings, Inc., Macy's Credit and Customer Services, Inc., and Macy's Credit Operations, Inc. as Defendants.  ECF Nos. 31, 33.

On August 23, 2019, Defendants again moved to dismiss Plaintiffs' complaint on the grounds that the Court lacked jurisdiction over three of the four Defendants and that the complaint did not satisfy Rule 8(a)(2).  ECF No. 39.  Following Defendants' second motion, the Parties met and conferred.  Miazad Decl. ¶ 11.  On September 6, 2019, the Parties stipulated to the voluntary dismissal of Ms. Rolfer's claims against Defendants and to the filing of Plaintiffs' Second Amended Complaint.  ECF No. 46.  Plaintiff Fortune filed its Second Amended Complaint on September 10, 2019, against Macy's, Inc., Macy's Retail Holdings, Inc., and Macy's Corporate Services, Inc.  ECF No. 50.  Shortly after, the Parties again conferred, and on September 25, 2019 stipulated to the filing of a Third Amended Complaint.  ECF No. 54.  On September 30, 2019, Plaintiffs filed the Third Amended Complaint, adding a Fair Chance Act claim on behalf of Plaintiff Michael Clark and a putative class of similarly situated job applicants against Defendants.  ECF No. 56.  Defendants partially answered and partially moved to dismiss the Third Amended Complaint on October 21, 2019.  ECF Nos. 61, 62.  Defendants' motion was fully briefed as of November 11, 2019 and has not been decided.  ECF No. 68.

On November 22, 2019, the Court held an initial status conference, at which parties notified the Court that they anticipated mediating the claims.  Shortly thereafter the parties began

preparing for mediation.

On September 3, 2020, the Parties stipulated to the filing of a Fourth Amended Complaint, which Plaintiffs filed the same day.  ECF Nos. 98, 99.

## II.   Settlement Negotiations

In Fall 2019, the Parties began to explore a potential resolution of Plaintiffs' claims. Miazad Decl. ¶ 18.  Over the course of several months, the Parties met and conferred over the exchange of documents and information that each party believed to be necessary to engage in meaningful settlement discussions.  Miazad Decl. ¶ 19; ECF No. 73.  Macy's produced over a thousand pages of policy documents, personnel files, guidelines, training materials, and other documents, as well as spreadsheets containing hundreds of thousands of rows of applicant data. Miazad Decl. ¶ 20.  Plaintiff Clark also produced screenshots of the questions he was asked as part of Macy's' application process.  *Id.* ¶ 21.  The Parties then carefully analyzed the large volume of documents and data that each side produced.  *Id.* ¶ 22.

The Parties attended a mediation with Hunter Hughes on January 10, 2020.  *Id.* ¶ 23.  Mr. Hughes is a well-respected mediator with significant experience involving employment law disputes, including the criminal history discrimination claims at issue here.  *Id.* ¶ 24.  The Parties made considerable progress towards resolving the action at the mediation and reached agreement on the monetary payment.  *Id.* ¶ 25.  The Parties then spent several months negotiating the terms of the injunctive relief.  *See* ECF Nos. 78, 80, 82, 84, 86, 88, 91, 92, 95.  Following months of arm's-length negotiations with the continued assistance of Mr. Hughes, the Parties executed a settlement term sheet on July 6, 2020.  Miazad Decl. ¶ 27.  The Parties then continued to negotiate and finalize a full settlement agreement, which was fully executed on August 31, 2020.

*Id.* ¶ 28; *see also id.*, Ex. A.

## SUMMARY OF PROPOSED SETTLEMENT

### I.      Monetary Settlement Terms

Defendants have agreed to pay $1,800,000 into a Gross Settlement Fund.  Miazad Decl.,

Ex. A § 3.1(B).  This total includes payments to Class Members, a Settlement Payment to

Plaintiff Fortune of $50,000, a Court-approved Service Award to Plaintiff Clark, Court-approved

attorneys' fees and costs, and costs of settlement administration in excess of $10,000.00.  *Id.*

§ 1.16, 1.20, 3.4(B).  Defendants have agreed to pay up to $10,000.00 in costs associated with

the settlement administration.  *Id.* § 1.20, 3.1(D).  Any uncashed checks remaining from the

Gross Settlement Fund shall be awarded to a *cy pres* designee, the New York-based organization

Getting Out and Staying Out.  *Id.* § 3.1(E).

### II.     Programmatic Relief

Defendants have agreed to substantial measures to address their criminal screening

process to the benefit of Class Members and future applicants to Macy's.

First, Defendants will revise their application to remove any reference to the requirement

for a background check for any applicant in New York City.  *Id.* § 3.4(C).

Second, Defendants have agreed to retain an Industrial Organizational ("IO")

Psychologist, Dr. Kathleen Lundquist (the "Consultant"), who will "review Macy's current

criminal history screening and background check policies and practices at Macy's retail stores in

New York City in light of the NYCHRL, the New York State Correction Law, and Title VII."

*Id.* § 3.3(C); *see also id.* §3.3(E)(1)-(7) (listing specific areas of focus for the Consultant's

review).  Ms. Lundquist is a nationally-recognized IO psychologist with extensive expertise in

evaluating and designing lawful policies concerning the use of criminal history screening in

employment decision-making.  Miazad Decl. ¶ 22.  Defendants will "make changes that are consistent with the Consultant's guidance to have a legally compliant program."  *Id.*, Ex. A § 3.3(C).

Finally, Defendants have agreed to maintain any changes implemented for a minimum of two years and will provide information to Plaintiffs' counsel regarding their adoption of the Consultant's guidance.  *Id.* § 3.3(G)(1).  Under the agreement, the Consultant "will provide Plaintiffs' counsel with a written status report summarizing the changes which will be implemented."  *Id.* § 3.3(G).  The Consultant will also "certify compliance" and "inform Plaintiffs when the agreed upon changes have been implemented."  *Id.*  If Defendants and the Consultant cannot reach agreement on changes to Defendants' background screening program, the Consultant will so notify Plaintiffs' counsel, and the Parties will meet and confer on what further action, if any, will be taken.  *Id.* § 3.3(G)(2).  The Parties agree that any disputes regarding compliance, or other "disputes regarding any term of the settlement that they cannot resolve directly" will be mediated by Mr. Hughes.  *Id.* § 3.3(H).

## III.   Class Definition

"Class Members" are defined as all New York City applicants who applied to work at Macy's through its online portal and who were denied employment because they did not consent to Macy's background check in their online application for the period of September 1, 2017 through January 10, 2020.  *Id.* § 1.7; *see also* Fourth Am. Compl. ¶ 96.  Based on Macy's' records, the Parties estimate there are approximately 1,171 Class Members.  Miazad Decl. ¶ 30.

## IV.   Releases for Proposed Class Members

Settlement Class Members—*i.e.*, those Class Members who do not submit a valid opt-out statement, *id.*, Ex. A § 1.26—will narrowly release Defendants from "all claims arising from or

6

relating to Macy's' denial of employment because of a failure to consent to its criminal

background check question on their online application under the NYCHRL, Article 23-A of the

New York State Correction Law, and N.Y.C. Admin. Code § 8-107(11-a)(3)." *Id.* §§ 1.8, 5.1.

## V.      Attorneys' Fees and Costs

Under the agreement, Class Counsel will request Court-approval of attorneys' fees in the

amount of $600,000.00, plus reimbursement of reasonable out-of-pocket costs and expenses. *Id.*

§ 3.5(A).

## VI.     Settlement Administration

The Parties will jointly select a Settlement Administrator to distribute the Notices, Court-

approved Service Award, Court-approved attorneys' fees and costs, and settlement payments,

and to otherwise administer the settlement. *Id.* § 2.2.  Within 14 days of receiving the Class List

from Defendants, the Settlement Administrator shall distribute the Court-approved Notice by

email and U.S. mail. *Id.* § 4.1(B).  The Settlement Administrator will maintain a case website

and email account to answer Settlement Class Members' questions. *Id.* § 2.2.

Class Members shall have 45 days from the date of mailing to object to or opt out of the

settlement. *Id.* § 4.1(C).  For any Notices returned as undeliverable, the Settlement

Administrator will take all reasonable steps to obtain the correct address and shall attempt to re-

mail the Notice. *Id.* § 4.1(D).  Within 30 days of the Effective Date of the settlement—*i.e.*, the

date when the time for appeal of the Court's order approving the settlement expires, *id.* § 1.13—

the Settlement Administrator shall distribute checks to all Settlement Class Members. *Id.*

§ 4.1(E).  Each Settlement Class Member shall have 90 days to cash her check. *Id.* § 4.1(F).  The

Settlement Administrator shall distribute a reminder postcard by e-mail and U.S. mail halfway

through the 90-day check cashing period. *Id.* § 4.1(G).  Any uncashed amounts will be awarded

to the *cy pres* designee, Getting Out and Staying Out.  *Id.* §§ 4.1(H), 3.1(E).

## CLASS ACTION SETTLEMENT PROCEDURE

Rule 23's class action settlement procedure includes three distinct steps:

1.    Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.    Dissemination of notice of settlement to all affected class members by first class mail and electronic mail; and

3.    A final settlement approval hearing at which class members may be heard regarding the settlement, and at which arguments concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, 4 *Newberg on Class Actions* ("Newberg"), § 13:10 (5th ed. 2017).  This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of the class's interests.  With this motion, Plaintiffs request that the Court take the first step: grant preliminary approval of the settlement agreement; conditionally certify the Settlement Class; and approve Plaintiffs' proposed Notice and order its distribution.

## ARGUMENT

## I.    Preliminary Approval of the Class Action Settlement Is Appropriate

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context" (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).  The approval of a proposed class action settlement is a matter of discretion for the trial court.  *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).  In exercising discretion, "courts should give 'proper deference to the private consensual decision of the parties.'"  *Torres v. Gristede's Operating Corp.*, No. 04

8

Civ. 3316 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010) (quoting *Clark v. Ecolab, Inc.*, No. 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)).

Review of a class settlement proceeds in steps.  First, "counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation (Fourth) § 21.632 (2004).  The Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980).  Then, after notice is given to the class, the court holds a fairness hearing.  *See* Manual for Complex Litigation (Fourth) § 21.634.

Preliminary approval requires an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. *Newberg* § 13:10.  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement.  *Wal-Mart Stores*, 396 F.3d at 116.  "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id.* at 116 (quoting Manual for Complex Litigation (Third) § 30.42 (1995)) (internal quotation marks omitted).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *2 (E.D.N.Y. Feb. 18, 2011) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)) (alterations in original).

The first step in the settlement process simply allows notice to be issued to the class and for class members to object to or opt out of the settlement.  After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input.  In evaluating a

9

class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberg v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). Although the Court need not evaluate the *Grinnell* factors to conduct its initial evaluation of the settlement, for purposes of evaluating the settlement's fairness, it is useful for the Court to consider these criteria.

The *Grinnell* factors are:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and]
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).

Here, the relevant *Grinnell* factors weigh in favor of preliminary approval.

## A.    Litigation Would Be Complex, Costly, and Long (Factor 1).

By reaching a favorable settlement early, before certification and dispositive motions, trial, or appeals, Plaintiffs avoid significant expense and delay and ensure timely individual and programmatic relief for the Class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is extremely complex, with an organizational plaintiff, approximately 1,171 putative Class Members, and fact-intensive Title

VII and NYCHRL claims involving the legality of a large sophisticated retail corporation's job applicant screening processes.  Miazad Decl. ¶ 31.

Establishing both liability and damages would require significant and complicated factual discovery.  Defendants have already filed multiple motions to dismiss, one of which is presently fully briefed and pending, asserting that some of the Macy's entities were not appropriate defendants in this action.  Although Plaintiffs are confident that they would have prevailed in opposing these arguments, they may have been required to undertake additional jurisdictional discovery regarding Defendants' corporate structures and relationship in order to hold each of the corporate defendants liable.

While there is supporting case law for bringing and succeeding in Title VII disparate impact claims involving criminal background checks, *see, e.g.*, *Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014), such claims are not without risk and often involve a fact-intensive inquiry and expert discovery.  In addition, Defendants have indicated that if litigation were to proceed, they would challenge the basis for Fortune's organizational standing, which may require additional discovery and motion briefing.  *See* ECF No. 61 (Answer), Defenses No. 1. Plaintiffs would also have to undertake class-wide discovery to establish their Fair Chance Act claims.

Finally, Plaintiffs would face risks as to class certification and summary judgment even after a lengthy discovery process.  After surviving those certification and dispositive motions, a trial on the merits would involve significant risk as to both liability and damages.  While Plaintiffs believe they could ultimately defeat Defendants' defenses and establish liability, this would require significant factual development and favorable outcomes at trial, and on appeal, all of which are inherently uncertain and lengthy.  The proposed settlement minimizes uncertainty,

and therefore this factor weighs in favor of preliminary approval.

**B.    The Court Cannot Assess the Reaction of the Class Until After Notice Issues (Factor 2).**

After notice is issued and class members have had an opportunity to be heard, the Court can fully analyze the second *Grinnell* factor.  However, Plaintiffs note that the settlement provides significant monetary relief for Class Members (estimated to be around $900 net per individual), who were blocked from submitting job applications to work in Defendants' New York City retail stores, as well as programmatic relief that will result in changes to Defendants' application portal, which will no longer inquire about criminal history or reference a criminal background check, and additional changes to Defendants' evaluation of applicants' criminal history in its hiring process.  Miazad Decl. ¶ 32.  For these reasons, Plaintiffs' Counsel are confident that Class Members will respond favorably to the settlement.

**C.    The Parties Have Exchanged Sufficient Relevant Information to Evaluate the Claims and Defenses (Factor 3).**

The Parties have completed ample informal discovery to determine the strengths and potential weakness of their claims.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001)); *see also Karic v. Major Auto. Cos., Inc.*, No. 09 Civ. 5708, 2016 WL 1745037, at *6 (E.D.N.Y. Apr. 27, 2016) (same).  "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust*

*Litig.*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)) (alterations in original).

The Parties' efforts and informal discovery here meet this standard.  Plaintiffs engaged in significant investigation before filing the case.  Miazad Decl. ¶ 8. Prior to the mediation process, Defendants also produced substantial documents and information pertaining to their policies and procedures in screening for criminal background checks, and extensive personnel and applicant data.  *Id*. ¶ 20 .  Plaintiffs' Counsel carefully reviewed and analyzed these documents and data. *Id.* ¶ 22.  Plaintiffs also produced documents and responded to Defendants' inquiries related to their claims.  *Id.* ¶ 21.  This exchange of information and data allowed the Parties to have the critical information they needed to value the case and make an informed decision on settlement.

Based on their informal exchange of information, the Parties were well equipped to evaluate the strengths and weaknesses and "had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.  Thus, this factor supports preliminary approval.  *See, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (collecting cases) (granting preliminary approval even where no formal discovery had occurred).

### D.     The Risk of Establishing Liability and Damages for the Class Through Trial Favors Approval (Factors 4 and 5).

Although Plaintiffs believe their class claims are meritorious, they also recognize the significant legal and procedural obstacles they would face in establishing liability and recovering damages.  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

13

Class actions under the Fair Chance Act provisions of the NYCHRL are subject to considerable risk.  Miazad Decl. ¶ 33.  This is especially true here, where Plaintiffs' legal theory is novel and the Fair Chance Act provisions on which Plaintiffs base their claims have not yet undergone much court analysis.  The Class claim faces evidentiary and legal challenges, including establishing that each Class Member was asked to consent to a background check during the online application, and that Defendants' job application questions violated the law. *Id.*  Defendants strongly contest the legal and factual basis for Plaintiffs' claims.  Additionally, estimating damages for an applicant class is not without challenges.  Because Plaintiff Clark and other Class Members were not able to actually submit their job applications, they may not have been able to establish that they would have received employment offers and are entitled to any lost wages.  Defendants likely would argue that questions concerning individual employment decisions and entitlement to damages would overwhelm the litigation and the claims are not suitable for determination on a classwide basis.  If the Court agreed, even if Plaintiffs prevailed on the merits, eligibility for back pay would likely have to be determined through some form of individualized hearings for each of the approximately 1,171 Class Members.  *See Int'l Bhd of Teamsters v. United States*, 431 U.S. 324, 361, 371-76 (1977).

In contrast to these known risks, the settlement ensures that Defendants will provide monetary relief to Class Members and make changes to its job applications and broader background check screening policy.  These circumstances favor preliminary approval.

### E.      The Risk of Obtaining Class Certification Favors Approval (Factor 6).

The risk of obtaining class certification and maintaining it through trial is also present. The Court has not yet certified the class, and such a determination would likely be reached only after further discovery and briefing.  Plaintiffs believe that they have a strong case for class

certification.  As noted above, however, Defendants would likely argue that individualized

damages questions predominate over other common questions, including whether Class

Members were qualified for and would have been offered employment for the positions to which

they applied, the expected duration particularly in light of the significant layoffs and furloughs

by Macy's since March 2020,  part-time/full-time status of those positions and the expected

compensation.

Although courts have certified class challenges to background check policies and

application procedures, there is nonetheless a legitimate risk that the Court would conclude that

individualized factual inquiries would preclude class treatment or that a damages class could not

be certified.  *See, e.g.*, *Delmoral v. Credit Prot. Ass'n, LP*, No. 13 Civ. 242, 2015 WL 5793311,

at *6 (E.D.N.Y. Sept. 30, 2015) (denying class certification in FDCPA case where "each

proposed class member's claim would require an individualized determination of exactly when

he or she received the" relevant communications).  Should the Court certify the Class,

Defendants would likely later challenge certification and move to decertify, requiring another

round of briefing.  Defendants might also seek permission to file an interlocutory appeal under

Rule 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk,

expense, and delay.  This factor also favors preliminary approval.

### F.    There Is Risk That Defendants Cannot Withstand a Greater Judgment (Factor 7).

Like many large retail corporations, Defendants are currently experiencing significant

financial uncertainty stemming from the ongoing COVID-19 pandemic.[3]  As many other well-

---

[3]     *See* Doug Whiteman, *These Chains Are Permanently Closing the Most Stores in 2020*,
MoneyWise (Aug. 12, 2020), https://moneywise.com/a/chains-closing-the-most-stores-in-2020
(listing Macy's, among other stores); *see also* Dan Primack, *Macy's dodges bankruptcy by*

established retail chains file for bankruptcy, there is a risk that Macy's may follow the same path.[4] There is therefore significant risk that Defendants would be unable to withstand a greater judgment if the litigation were to proceed. However, even if Defendants regain financial stability, the "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9. Here, the settlement eliminates the risk of that Plaintiffs and Class Members may not recover anything if Defendants are forced into bankruptcy like many of their competitors. The settlement ensures that Defendants will promptly transfer the full $1,800,000 to the Settlement Administrator within 14 days of the Effective Date. Miazad Decl., Ex. A § 3.1(B). Accordingly, this factor favors settlement approval.

### G. The Settlement Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Factors 8 and 9).

The relief provided in the settlement is comprehensive. In particular, it provides for monetary compensation for every Class Member from a Gross Settlement Fund of $1,800,000, as well as changes to Defendants' job application and criminal history screening process.

Through this settlement, all Class Members are entitled to a pro rata share of the Net Settlement Fund—which Plaintiffs' Counsel estimates will result in a net award of at least $900 per person—as compensation for their claim. This is an excellent class recovery, particularly given the litigation risks faced by Class Members and the fact that they had a low probability of actually being hired even if they had been able to successfully submit their applications.

---

*securing $4.5 billion in financing*, Axios (June 10, 2020), https://www.axios.com/macys-financing-bankruptcy-9e973693-6cd9-4ad7-bf26-0914dbaeb7fc.html.

[4] *See* Jordan Valinsky, *Big Chains Filed for Bankruptcy and Closed Stores Every Week in July. Here Are 9 of Them,* CNN Business (July 27, 2020, 9:00 A.M.), https://www.cnn.com/2020/07/25/business/july-bankruptcies-coronavirus/index.html.

Significantly, there are no barriers to receiving this monetary relief, such as onerous claims forms; instead, any Class Member who does not opt out of the settlement will receive a share. Such a recovery is larger than what courts have found to be a reasonable recovery in other similar claims involving consumer background checks. *See, e.g.*, *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007) (finally approving payments up to $100 for class members who submit claims subject to *pro rata* reduction if total claims exceed available balance after deduction of settlement expenses for claims alleging violations of the FCRA); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 470, 477 (W.D. Va. 2011) (finally approving proportional payments up to $100, but no less than $2, for class members who submit claim forms alleging violations of the FCRA).[5]

Beyond the cash payments, the settlement requires Defendants to undertake substantial programmatic changes that, in Plaintiffs' view, benefit all Class Members and future applicants who have faced challenges in their efforts to gain meaningful employment because of their criminal records. Most directly, Defendants have agreed to completely drop the requirement that applicants to New York City stores consent to a background check as part of the application process. Miazad Decl., Ex. A § 32. Further, for applicants with criminal histories, Defendants have also agreed to make further changes to their criminal history screening policies and processes following review by an independent expert. *Id.* § 29. These changes will greatly benefit Class Members who remain interested in employment at Macy's, which is one of the largest retail companies in the country.

---

[5]     *See also Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 238, 2016 WL 1070819, at *2, *6 (E.D. Va. Mar. 15, 2016) (finally approving settlement of FCRA action where class members would receive either $35 or $75 dollars); *Syed v. M-I LLC*, No. 14 Civ. 742, 2016 WL 310135, at *2, *8-9 (E.D. Cal. Jan. 26, 2016) (same, where class members would receive approximately $16).

In sum, the terms of the Settlement Agreement are fair and reasonable, as evidenced by application of the relevant *Grinnell* factors.

## II.   Conditional Certification of the Class Is Appropriate.

For settlement purposes, Plaintiffs seek to certify the proposed Settlement Class under Rule 23(b)(3).  *See* Miazad Decl., Ex. A § 2.3(C).  As stated further below, the proposed Settlement Class satisfies Rule 23's requirements.  Defendants do not oppose class certification for the purpose of settlement only.

### A.   Numerosity Is Satisfied.

"[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted).  According to information produced by Defendants, there are approximately 1,171 Class Members.  Miazad Decl. ¶ 30. The proposed Class easily satisfies this requirement.

### B.   Commonality Is Satisfied.

The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, all Class Members are unified by common factual allegations and legal theories—they all applied for employment at Defendants' New York City retail locations; were asked as part of the application to consent to a background check; declined consent; and were denied employment as a result.  Plaintiffs allege that Defendants' common practice of requiring consent to a background check in the job application, prior to a conditional offer of employment, violates the Fair Chance Act.  In the settlement context, courts have found Rule 23's commonality

18

requirement to be satisfied where plaintiffs challenge a commonly-applied background check policy. *See **Error! Bookmark not defined.**Times v. Target Corp.*, No. 18 Civ. 2993, 2019 WL 5616867, at *5 (S.D.N.Y. Oct. 29, 2019) (approving settlement class challenging defendants' background check policies and practices); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600 2019 WL 4316125, at *2 (E.D.N.Y. Sept. 10, 2019) (same).

## C.    Typicality Is Satisfied.

"Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 182 (W.D.N.Y. 2005).  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *In re Drexel Burnham Lambert Grp., Inc*., 960 F.2d 285, 291 (2d Cir. 1992)) (internal quotation marks omitted).  "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, Plaintiff Clark alleges that he, like all other Class Members, was asked to consent to a background check during his application with Defendants, declined to consent, and was then rejected due to that denial.  *See* Fourth Am. Compl. ¶¶ 96-99.  Typicality is met because Plaintiff Clark and all putative Class Members were subjected to the same application process, which Plaintiffs challenge as unlawful under the Fair Chance Act.  *See Times*, 2019 WL 5616867, at *1; *Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 97-98 (S.D.N.Y. 2010).

### D.      Adequacy of the Named Plaintiff Is Satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the named representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting *Martens*, 181 F.R.D. at 259) (internal quotation marks omitted).

Plaintiff Clark meets the adequacy requirement because he does not have interests that are antagonistic to or at odds with those of putative Class Members. *See Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 1656920, at *2 (S.D.N.Y. May 9, 2012) (adequacy satisfied where, *inter alia*, there was no evidence that named plaintiffs' and class members' interests were at odds). Plaintiff Clark's experience was substantially the same as that of all other Class Members, and he has the same interest in remedying Defendants' alleged violations.

### E.      Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions of law or fact not only be present, but also that they "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997)) (internal quotation marks omitted).  For the purposes of settlement, these requirements are met.

### 1.   Common Questions Predominate.

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks and citation omitted), *abrogated on other grounds by Miles v. Merrill Lynch & Co.* (*In re Initial Pub. Offering Sec. Litig.*), 471 F.3d 24 (2d Cir. 2006).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied.  *See McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Plaintiff Clark's common contention—that Defendants' job application unlawfully required consent to a background check prior to a conditional offer and denied employment for withholding consent—predominates over any issues affecting only individual Class Members.  *See Times*, 2019 WL 5616867, at *1 (finding allegations that defendants excluded applicants based on criminal history predominated for settlement purposes); ***Error! Bookmark not defined.****Chen-Oster v. Goldman, Sachs & Co.*, 325 F.R.D. 55, 80-81 (S.D.N.Y. 2018) (finding that common issues predominated on disparate impact claims challenging the company's promotion practices under Title VII).  No individualized issues inhibit the Court's ability to determine this common merits question.

### 2.   A Class Action Is a Superior Mechanism.

Rule 23(b)(3) next considers whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[6]  Fed. R. Civ. P. 23(b)(3).  Here, there are no other pending actions that challenge the at-issue claims.  It makes good sense to concentrate the litigation in this forum because Plaintiff Clark's and Class Members' claims arise under New York City law.

Moreover, certification of the Settlement Class is "superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually." *Capsolas*, 2012 WL 1656920, at *2.  Here, Plaintiff Clark and Class Members are applicants for retail employment positions, some of which pay near the minimum wage, and have limited financial resources with which to prosecute individual actions.  It is thus more efficient to resolve the claims on a class basis because the individual class members may not have the resources to bring individual actions.  Employing the class device here will achieve economies of scale for Class Members and conserve judicial resources.

### III. Plaintiffs' Counsel Should Be Appointed as Class Counsel.

O&G, LDF, and YR should be appointed as Class Counsel.  Rule 23(g), which governs the standards and framework for appointing class counsel, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has

---

[6]      Another factor, whether the case would be manageable as a class action at trial, is not of consequence in evaluating a settlement class.  *See **Error! Bookmark not defined.**Amchem*, 521 U.S. at 620.

done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). "No single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23, advisory committee's notes to 2003 amendment.

Plaintiffs' Counsel satisfy these criteria. They have done substantial work identifying, investigating, negotiating, and settling Plaintiffs' and putative Class Members' claims. Miazad Decl. ¶¶ 1-21; Decl. of Coty Montag ("Montag Decl.") ¶¶ 16-21; Decl. of Michael Pope ("Pope Decl.") ¶¶ 11-14. Plaintiffs' Counsel have substantial experience prosecuting and settling employment class actions, including cases involving challenges to background check policies such as those at issue here. Miazad Decl. ¶¶ 6-7. Plaintiffs' Counsel are well-versed in the impediments to employment that criminal records create and are at the forefront of litigating issues of criminal history discrimination. *Id.* ¶ 7; Montag Decl. ¶¶ 1-15; Pope Decl. ¶¶ 1-10; *see also, e.g.*, *Millien v. Madison Square Garden Co.*, No. 17 Civ. 4000, 2020 WL 4572678, at *3 (S.D.N.Y. Aug. 7, 2020) (recognizing O&G and YR as having significant experience litigating cases challenging employers' criminal background check policies); *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 422 (D.D.C. 2017) (Collyer, J.) (recognizing class counsel, which included LDF, as adequate in a Title VII challenge to employer's use of criminal background checks, and noting that "class counsel are experienced in class actions and other complex litigation"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (finding O&G and non-profit partners "bring to the case a wealth of class action litigation experience" and were

23

adequate to represent approximately a half-million person Black and Latino job applicant class in background check litigation); *see also Times*, 2019 WL 5616867, at *4 (approving O&G and LDF as class counsel because they are "experienced class action and employment lawyers with good reputations among the class action and employment bars and significant experience in litigating criminal history discrimination matters"); *Kelly*, 2019 WL 4316125, at *1 (granting final approval of O&G and YR settlement); *Keels v. Geo Grp., Inc.*, No. 15 Civ. 6261, 2017 WL 4477000, at *1 (E.D.N.Y. Oct. 1 2017) (appointing O&G as class counsel in FCRA case); *Pickett v. SIMOS Insourcing Sols., Corp.*, No. 17 Civ. 1013, 2017 WL 3444755, at *1 (N.D. Ill. Aug. 10, 2017) (appointing O&G as class counsel in FCRA case).

## IV.     The Proposed Notice and Distribution Process Are Appropriate.

Plaintiffs' proposed Notice fully complies with due process and Rule 23(c)(2)(B). The Notice is written in plain language and organized and formatted to be as clear as possible. Fed. R. Civ. P. 23(c)(2)(B). It is based on the model notices provided by the Federal Judicial Center ("FJC").[7] *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices). The Notice describes the settlement's terms, informs Class Members about the fees and costs allocation, explains how to opt out or object, and will provide the date, time, and place of the fairness hearing. *See* Miazad Decl., Ex. B.

The Settlement Administrator will mail and e-mail the Notice to Class Members, create and administer a website, take reasonable steps to obtain correct addresses for Class Members whose notice is returned as undeliverable, attempt re-mailings for those Class Members, and

---

[7]      *See* Federal Judicial Center, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited August 5, 2020).

send reminder notices by mail and e-mail.  *See* Miazad Decl., Ex. A § 4.1.  No claim form is required, and the proposed Notice process presents no barriers to participation in the settlement. *Id*.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court preliminarily approve the settlement, conditionally certify the proposed Settlement Class, appoint Plaintiffs' Counsel as Class Counsel, approve the proposed Notice, and enter an Order granting Plaintiffs' Motion.[8]

Date:   September 3, 2020
        New York, New York                 Respectfully submitted,

                                            */s/ Ossai Miazad*
                                            **OUTTEN & GOLDEN LLP**
                                            Ossai Miazad
                                            Lewis Steel
                                            Chauniqua D. Young
                                            Maya S. Jumper
                                            Michael C. Danna
                                            685 Third Avenue, 25th Floor
                                            New York, New York 10017
                                            Telephone: (212) 245-1000

                                            **NAACP LEGAL DEFENSE
                                            AND EDUCATIONAL FUND, INC.**
                                            Rachel Kleinman
                                            40 Rector Street, 5th Floor
                                            New York, New York 10006

                                            Coty Montag (admitted *pro hac vice*)
                                            Jason Bailey (admitted *pro hac vice*)
                                            700 14th Street NW, Suite 600
                                            Washington, DC 20005
                                            Telephone: (202) 216-5573

                                            **YOUTH REPRESENT**
                                            Michael Pope
                                            Eric Eingold

---

[8]     For the Court's convenience, a proposed Order is attached as Exhibit C to the Miazad Declaration.

Dale Ventura
11 Park Place, Suite 1512
New York, NY 10007
Telephone: (646) 759-8080

*Attorneys for Plaintiffs and the Putative Class*