**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE FORTUNE SOCIETY, INC., on behalf of itself and its participants, and MICHAEL CLARK, on behalf of himself and all others similarly situated,<br><br>                           Plaintiffs,<br><br>v.<br><br>MACY'S, INC., MACY'S RETAIL HOLDINGS, INC. d/b/a MACY'S, and MACY'S CORPORATE SERVICES, INC.,<br><br>                           Defendants. | Case No. 19-cv-05961-RA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CERTIFICATION OF THE <u>SETTLEMENT CLASS</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

CASE HISTORY ................................................................................................................... 2

I.       Class Investigation and Litigation ............................................................................ 2

II.      The Parties' Settlement Negotiations........................................................................ 4

III.     Notice of Settlement to the Class Members.............................................................. 5

SUMMARY OF THE SETTLEMENT TERMS ........................................................................ 6

I.       Monetary Settlement Terms...................................................................................... 6

II.      Programmatic Relief ................................................................................................. 6

III.     Release of Claims ..................................................................................................... 8

ARGUMENT ........................................................................................................................ 8

I.       Judicial Policy Favors Settlement............................................................................. 8

II.      The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All
         Respects. .................................................................................................................. 8

         A.       The Settlement Is Procedurally Fair. ....................................................... 9

         B.       The Settlement Is Substantively Fair. .................................................... 12

                  1.      Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell*
                          Factor 1). ..................................................................................... 12

                  2.      The Reaction of the Class Supports Final Approval (*Grinnell* Factor 2).  13

                  3.      Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                          Case Responsibly (*Grinnell* Factor 3)........................................... 14

                  4.      Plaintiffs Would Face Substantial Risks if the Case Proceeded (*Grinnell*
                          Factors 4 and 5).......................................................................... 15

                  5.      Managing the Class Through Trial Would Not Be Simple (*Grinnell* Factor
                          6). .............................................................................................. 16

                  6.      There Is Significant Risk That Defendants Cannot Withstand a Greater
                          Judgment (Factor 7). .................................................................. 17

                  7.      The Settlement Is Substantial in Light of the Best Possible Recovery and
                          the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9). .................. 17

III.     Final Certification of the Settlement Class under Rule 23(b)(3) Is Appropriate............. 19

IV.     The Class Notice Satisfies Rule 23.................................................................................... 20

CONCLUSION..................................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                        PAGE(S)

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................13, 17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).................................................................... *passim*

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).................................................................................8

*Delmoral v. Credit Prot. Ass'n, LP*,
    No. 13 Civ. 242, 2015 WL 5793311 (E.D.N.Y. Sept. 30, 2015)...........................15

*Domonoske v. Bank of Am., N.A.*,
    790 F. Supp. 2d 466 (W.D. Va. 2011) ...............................................................18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........................9

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ..........................19

*Hochstadt v. Boston Sci. Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ............................................................12, 14

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014).............................................................11, 15

*In re Ira Haupt & Co.*,
    304 F. Supp. 917 (S.D.N.Y. 1969) .....................................................................15

*Keels v. Geo Grp., Inc.*,
    No. 15 Civ. 6261, 2017 WL 4477000 (E.D.N.Y. Oct. 1 2017) ...........................11

*Kelly v. Brooklyn Events Ctr., LLC*,
    No. 17 Civ. 4600, 2019 WL 4316125 (E.D.N.Y. Sept. 10, 2019).........................11

*Little v. Washington Metro. Area Transit Auth.*,
    249 F. Supp. 3d 394 (D.D.C. 2017) ...................................................................11

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 14 Civ. 238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...........................18

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009).................................................................................9

*Millien v. Madison Square Garden Co.*,
 No. 17 Civ. 4000, 2020 WL 4572678 (S.D.N.Y. Aug. 7, 2020) ...........................................11

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................................................8

*Pickett v. SIMOS Insourcing Sols., Corp.*,
 No. 17 Civ. 1013, 2017 WL 3444755 (N.D. Ill. Aug. 10, 2017)...........................................11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) .................................................................................................9

*In re Puerto Rican Cabotage Antitrust Litig.*,
 269 F.R.D. 125 (D.P.R. 2010) ...................................................................................................14

*Reyes v. Buddha-Bar NYC*,
 No. 08 Civ. 2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009)............................................9

*Syed v. M-I LLC*,
 No. 14 Civ. 742, 2016 WL 310135 (E.D. Cal. Jan. 26, 2016).................................................18

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
 No. 01 Civ. 11814, 2004 WL 2997957 (S.D.N.Y. May 14, 2004).........................................19

*Times v. Target Corp.*,
 No 18. Civ. 2993, 2019 WL 5616867 (S.D.N.Y. Oct. 29, 2019) ...........................................11

*In re Top Tankers, Inc. Sec. Litig.*,
 No. 06 Civ. 13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ...........................................9

*Toure v. Amerigroup Corp.*,
 No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)..............................................9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).....................................................................................................8, 9

*White v. First Am. Registry, Inc.*,
 No. 04 Civ. 1611, 2007 WL 703926 (S.D.N.Y. Mar. 7, 2007) .............................................18

*Wright v. Stern*,
 553 F. Supp. 2d 337 (S.D.N.Y. 2008)......................................................................................14

## Other Authorities

Dan Primack, *Macy's dodges bankruptcy by securing $4.5 billion in financing*,
 Axios (June 10, 2020), https://www.axios.com/macys-financing-bankruptcy-
 9e973693-6cd9-4ad7-bf26-0914dbaeb7fc.html.......................................................................17

Doug Whiteman, *These Chains Are Permanently Closing the Most Stores in 2020,*
     MoneyWise (Aug. 12, 2020), https://moneywise.com/a/chains-closing-the-
     most-stores-in-2020 ........................................................................................................17

Jordan Valinsky, *Big Chains Filed for Bankruptcy and Closed Stores Every Week
     in July. Here Are 9 of Them*, CNN Business (July 27, 2020, 9:00 A.M.),
     https://www.cnn.com/2020/07/25/business/july-bankruptcies-
     coronavirus/index.html ...................................................................................................17

N.Y.C. Admin. Code § 8-107 .................................................................................................2, 8

Fed. R. Civ. P. 23 ...............................................................................................8, 16, 19, 20, 21

## PRELIMINARY STATEMENT

Plaintiffs The Fortune Society, Inc. ("Fortune") and Michael Clark submit this Memorandum of Law in support of their Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Class ("Final Approval").  This proposed class action settlement will take significant steps towards ensuring a fairer criminal history screening process for one of the nation's largest retail companies, Macy's, Inc. (together with Macy's Retail Holdings, Inc. and Macy's Corporate Services, Inc., referred to as "Defendants" or "Macy's"), while also providing cash payments to Plaintiffs and all Class Members.

The Parties' $1,800,000.00 settlement, with substantial injunctive relief, satisfies all criteria for final approval.  Plaintiffs therefore seek an order approving as fair and adequate the Class-wide settlement of this action, as set forth in the Proposed Final Approval Order Granting Plaintiffs' Motion for Final Approval, attached as Exhibit 1 to the Declaration of Ossai Miazad in Support of Final Approval of Class Settlement, Service Award, and Attorneys' Fees and Costs, dated November 24, 2020 ("Miazad Decl.").[1]

The Court has already taken the first step in the settlement approval process by granting preliminary approval on September 4, 2020, directing that the Court-approved Class Notice be mailed to Class Members, and setting the date for the final fairness hearing for December 11, 2020.  ECF No. 105.  The members of the Class have been notified of the terms of the settlement, including the monetary and programmatic relief available to the Class, and their right to opt out of and object to the settlement.

---

[1]      Unless otherwise noted, all exhibits are attached to the Declaration of Ossai Miazad and capitalized items (such as "Class Members") are defined in the Parties' settlement agreement, signed August 31, 2020.  Miazad Decl., Ex. 2 (Settlement Agreement).

Class Members have responded overwhelmingly favorably to the settlement thus far. With only 10 days before the opt-out and objection period closes, only one of the 1,187 class members has exercised their right to opt out of the proposed settlement, and none have objected. *See* Miazad Decl. ¶ 44.  Class Counsel, a partnership of private and nonprofit litigators experienced in litigating employment discrimination and class action cases, firmly believe that this proposed settlement is in the best interests of the Class, as underscored by the response of the Class.  *Id.* ¶ 46.  In light of such strong support of the terms of the settlement, and for the reasons stated below, Plaintiffs respectfully request that the Court grant final approval.

## CASE HISTORY

I.     **Class Investigation and Litigation**

Plaintiffs Fortune and Jenetta Rolfer filed a class action complaint on June 26, 2019, alleging that Macy's, Inc. violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York City Human Rights Law ("NYCHRL") by: (1) unlawfully using applicants' and employees' criminal histories to screen and exclude them from obtaining and/or continuing employment at Macy's; (2) failing to weigh the factors outlined in Article 23-A of the Correction Law, in violation of N.Y.C. Admin Code § 8-107(10) and New York State Correction Law § 753; and (3) seeking New York City job applicants' consent to a criminal background check prior to extending a conditional offer of employment, in violation of the NYCHRL Fair Chance Act, N.Y.C. Admin. Code § 8-107(11-a)(3) ("Fair Chance Act").  *See* ECF No. 1.

Defendant Macy's, Inc. moved to dismiss the complaint on July 19, 2019, in part, for lack of jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2).  ECF No. 16. Plaintiffs filed their opposition to the motion and a First Amended Complaint, as of right, on

August 9, 2019, adding Macy's Retail Holdings, Inc., Macy's Credit and Customer Services, Inc., and Macy's Credit Operations, Inc. as Defendants.  ECF Nos. 31, 33.

Defendants again moved to dismiss Plaintiffs' amended complaint on August 23, 2019, arguing that the Court lacked jurisdiction over three of the four defendants and that the complaint did not satisfy Rule 8(a)(2).  ECF No. 39.  Following Defendants' second motion, the Parties met and conferred.  Miazad Decl. ¶ 20.  As a result, the Parties stipulated to the voluntary dismissal of Ms. Rolfer's claims against Defendants and to the filing of Plaintiffs' Second Amended Complaint.  ECF No. 46.

Plaintiff Fortune filed its Second Amended Complaint on September 10, 2019, against Macy's, Inc., Macy's Retail Holdings, Inc., and Macy's Corporate Services, Inc.  ECF No. 50.  Shortly after, the Parties again conferred, and subsequently stipulated to the filing of a Third Amended Complaint.  ECF No. 54.  Plaintiffs filed the Third Amended Complaint on September 30, 2019, adding a Fair Chance Act claim on behalf of Plaintiff Michael Clark and a putative class of similarly-situated job applicants against Defendants.  ECF No. 56.  Defendants partially answered and partially moved to dismiss the Third Amended Complaint on October 21, 2019.  ECF Nos. 61, 62.  Defendants' motion was fully briefed as of November 11, 2019.  ECF No. 68.

The Court held an initial status conference on November 22, 2019, at which the Parties notified the Court that they anticipated mediating the claims.  Shortly thereafter the parties began preparing for mediation.  Miazad Decl. ¶ 22.

The Parties stipulated to the filing of a Fourth Amended Complaint on September 3, 2020, which Plaintiffs filed the same day.  ECF Nos. 98, 99.

II.     **The Parties' Settlement Negotiations**

The Parties began to explore a potential resolution of Plaintiffs' claims in late 2019.

Miazad Decl. ¶ 24.  Over the course of several months, the Parties met and conferred over the

exchange of documents and information that each party believed to be necessary to engage in

meaningful settlement discussions.  *Id.* ¶ 25; ECF No. 73.  Macy's produced over a thousand

pages of policy documents, personnel files, guidelines, training materials, and other documents,

as well as spreadsheets containing hundreds of thousands of rows of applicant data.  Miazad

Decl. ¶ 27.  Plaintiff Clark also produced documents, including screenshots of the questions he

was asked as part of Macy's application process.  *Id.* ¶ 28.  The Parties then carefully analyzed

the large volume of documents and data that each side produced.  *Id.* ¶ 29.  Plaintiff's Counsel

additionally retained the services of and worked closely with a statistical expert to analyze

Macy's personnel data production, to prepare for mediation.  *Id.* ¶ 30.

The Parties attended a mediation with Hunter Hughes, Esq., on January 10, 2020.  *Id.*

¶ 31.  Mr. Hughes is a well-respected mediator with significant experience in employment law

and class action disputes, including the criminal history discrimination claims at issue here.  *Id.*

¶ 32.  The mediation between the Parties resulted in an agreement for: a monetary payment to all

Class Members' for their monetary claims; a service award for Plaintiff Clark for his

contributions to the Class; and a separate settlement payment to Fortune, for the organization's

individual harm alleged in the amended complaint (*i.e.*, being forced to infuse resources into

additional programs and services to assist its participants who are adversely affected by

Defendants' violation of Title VII and the NYCHRL).  *Id.* ¶ 34; Fourth Amend. Compl. ¶¶ 4, 26,

103-18.

4

The Parties then spent several months negotiating the terms of the injunctive relief. *See* ECF Nos. 78, 80, 82, 84, 86, 88, 91, 92, 95. Following six-months of arm's-length negotiations with the continued assistance of Mr. Hughes, the Parties executed a settlement term sheet on July 6, 2020. Miazad Decl. ¶ 36. The Parties then continued to negotiate and finalize a full settlement agreement, which was fully executed on August 31, 2020. *Id.* ¶ 37.

## III.    Notice of Settlement to the Class Members

On September 3, 2020, Plaintiffs moved for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class, Approval of Class Counsel, and Approval of Plaintiffs' Proposed Notice of Settlement. ("Plaintiffs' Motion for Preliminary Approval"). *See* ECF No. 101. This Court granted preliminary approval and dissemination of the proposed Class Notice, which explained the monetary and programmatic relief that addresses and corrects Macy's screening process, as well as the allocation of attorneys' fees and costs and the settlement payment to Fortune and service award to Plaintiff Clark. ECF No. 105. The Class Notice also provided specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement. *Id.*

The Parties jointly chose a Settlement Administrator, Analytics LLC, and on October 2, 2020, Defendants provided the Settlement Administrator with names, social security numbers, last known addresses, last known phone numbers, and available e-mail addresses of the Class Members. Miazad Decl. ¶ 41. Class Notices were electronically mailed and sent by first-class U.S. mail to 1,187 Class Members on October 16, 2020, by the Settlement Administrator. *Id.* ¶ 42. As of November 20, 2020, 208 notices were returned as undelivered. *Id.* ¶ 43. For these undelivered notices, the Settlement Administrator took reasonable steps to attempt to identify the

correct address and re-mail the notices, and re-mailed 62 notices.  *Id.*; *see also id.*, Ex. 2
(Settlement Agreement) § 4.1(D).

## SUMMARY OF THE SETTLEMENT TERMS

### I.  Monetary Settlement Terms

Pursuant to the settlement, Defendants will pay a total of  $1,800,000:  $1,750,000 to
fund payments to Class Members, a Court-approved service award to Plaintiff Clark, Court-
approved attorneys' fees and costs, and costs of settlement administration in excess of
$10,000.00, and an additional $50,000 as a settlement payment to Plaintiff Fortune in exchange
for a release from the organization as to harms suffered.  Miazad Decl., Ex. 2 (Settlement
Agreement) §§ 1.16, 1.20, 3.1(B), 3.4(B).  Defendants have agreed to pay up to $10,000.00 in
costs associated with the settlement administration.  *Id.* § 1.20, 3.1(D).

Class Members who do not exclude themselves from the settlement ("Settlement Class
Members") will receive a pro-rata settlement payment from the net settlement fund (*i.e.*, after
payments to the named Plaintiffs, attorneys' fees and costs, and costs for the settlement
administration in excess of $10,000.00).  Class Counsel estimates awards of at least $900 per
Settlement Class Members for compensation for their claim.  Miazad Decl. ¶ 48.  Any uncashed
checks remaining from the settlement fund will be awarded to a *cy pres* designee, the New York-
based organization Getting Out and Staying Out.  *Id.*, Ex. 2 (Settlement Agreement) § 3.1(E).

### II.  Programmatic Relief

Along with the monetary relief, the settlement provides class-wide programmatic relief
tailored to the civil rights violations alleged.  Defendants have agreed to substantial measures to
revise their application process to the benefit of Class Members and future applicants to Macy's.

First, Defendants have agreed to revise their job application to remove any reference to

the requirement for a background check for any applicant in New York City.  *Id.* § 3.4(C).

Second, Defendants have agreed to retain an Industrial Organizational ("IO") psychologist, Dr. Kathleen Lundquist (the "Consultant"), who will "review Macy's current criminal history screening and background check policies and practices at Macy's retail stores in New York City in light of the NYCHRL, the New York State Correction Law, and Title VII." *Id.* § 3.3(C); *see also id.* §3.3(E)(1)-(7) (listing specific areas of focus for the Consultant's review).  Ms. Lundquist is a nationally-recognized IO psychologist with extensive expertise in evaluating and designing lawful policies concerning the use of criminal history screening in employment decision-making.  Miazad Decl. ¶ 51.  Defendants will "make changes that are consistent with the Consultant's guidance to have a legally compliant program."  *Id.*, Ex. 2 (Settlement Agreement) § 3.3(C).

Finally, Defendants have agreed to maintain any changes implemented for a minimum of two years and will report to Class Counsel the measures Macy's took in adopting the Consultant's guidance.  *Id.* § 3.3(G)(1).  Under the agreement, the Consultant "will provide Plaintiffs' counsel with a written status report summarizing the changes which will be implemented."  *Id.* § 3.3(G).  The Consultant will also "certify compliance" and "inform Plaintiffs when the agreed upon changes have been implemented."  *Id.*  If Defendants and the Consultant cannot reach agreement on changes to Defendants' background screening program, the Consultant will notify Class Counsel, and the Parties will meet and confer on what further action, if any, will be taken.  *Id.* § 3.3(G)(2).  The Parties agreed that any disputes regarding compliance, or other "disputes regarding any term of the settlement that they cannot resolve directly" will be mediated by Mr. Hughes.  *Id.* § 3.3(H).

### III.     Release of Claims

Settlement Class Members will narrowly release Defendants from "all claims arising

from or relating to Macy's' denial of employment because of a failure to consent to its criminal

background check question on their online application under the NYCHRL, Article 23-A of the

New York State Correction Law, and N.Y.C. Admin. Code § 8-107(11-a)(3)." *Id.* §§ 1.8, 5.1.

## ARGUMENT

### I.     Judicial Policy Favors Settlement.

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a

product of collusion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.

2005) (citation and quotations omitted).  Although "[t]he decision to grant or deny such approval

lies squarely within the discretion of the trial court, . . . this discretion should be exercised in

light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*,

171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Accordingly, public

policy considerations strongly favor settlement, particularly in class actions.  *Wal-Mart*, 396 F.3d

at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the

class action context.").

### II.     The Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To

determine procedural fairness, courts examine the negotiating process leading to the settlement.

*Wal-Mart Stores, Inc.*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.

2001).  To determine substantive fairness, courts determine whether the settlement's terms are

fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In making its fairness determination, courts recognize the "unique ability of class and defense counsel to assess the potential risks and rewards of litigation. . . ."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (internal quotation marks omitted).

### A.  The Settlement Is Procedurally Fair.

A class settlement is presumptively fair, adequate, and reasonable if it is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 117 (citation omitted); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs conducted a thorough investigation and enlisted the services of an experienced employment law mediator); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *3 (S.D.N.Y. May 28, 2009) (same).

To find a settlement procedurally fair, reviewing courts "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."  *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted).  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

9

Here, the settlement negotiations between the Parties reflect a procedurally fair process. The negotiations spanned over ten months, involved many meetings and communications, included multiple settlement proposals, and were facilitated by an experienced class action mediator. Miazad Decl. ¶¶ 24-37. First, the Parties met and conferred many times over the exchange of documents and information that each party believed to be necessary to engage in meaningful settlement discussions. Miazad Decl. ¶ 25; ECF No. 73. Macy's then produced over a thousand pages of policy documents, personnel files, guidelines, training materials, and other documents, as well as spreadsheets containing hundreds of thousands of rows of applicant data. Miazad Decl. ¶ 27.

Class Counsel examined all of these critical documents to analyze the impact of overbroad criminal background checks on applicants of color, which informed their evaluation of the strengths and weaknesses of their claims and Macy's' defenses, as well their negotiating strategy. *Id.* ¶ 29. Plaintiff Clark also produced discovery requested by Macy's, including screenshots of the questions he was asked as part of Macy's' application process. *Id.* ¶ 28.

Prior to, during, and after the full-day mediation session, the Parties exchanged detailed written settlement proposals, and during the mediation session on January 10, 2020, they reached an agreement in principle to settle the case. *Id.* ¶¶ 33-34. The mediation was overseen by Mr. Hughes, a mediator with decades of experience in complex actions in the field of labor and employment law, including criminal history discrimination claims. *Id.* ¶¶ 31-32. Mr. Hughes was actively involved in the continued negotiations between the Parties after the full-day mediation regarding the details and terms of the critical injunctive relief. *See* ECF Nos. 78, 80, 82, 84, 86, 88, 91, 92, 95. Following months of these arm's-length negotiations, and with the continued assistance of Mr. Hughes, the Parties executed a settlement term sheet on July 6, 2020.

Miazad Decl. ¶ 36.  The Parties then continued to negotiate and finalize a full settlement agreement, which was fully executed on August 31, 2020.  *Id.* ¶ 37.

At all times during this process, the Parties' respective counsel argued and bargained vigorously on behalf of their clients.  *Id.* ¶ 36.  These arms'-length negotiations involved counsel well-versed in discrimination class action law, raising a presumption that the settlement meets the requirements of due process.  Plaintiffs are represented by lawyers who are recognized as national leaders in complex employment matters, who have been appointed as class counsel and successfully prosecuted numerous class actions, including in the area of criminal background discrimination.[2]  *See* Decl. of Coty Montag in Support of Plaintiffs' Unopposed Motions for Final Approval of Settlement and Certification of the Settlement Class, Approval of Attorneys' Fees and Costs, and Approval of Service Award, dated November 24, 2020 ("Montag Decl."); Decl. of Michael Pope in Support of Final Approval of Class Settlement, Service Award, and

---

[2]      Class Counsel are well-versed in the impediments to employment that criminal records create and are at the forefront of litigating issues of criminal history discrimination.  *Id.* ¶¶ 4-7; Montag Decl. ¶¶ 2-17; Pope Decl. ¶¶ 2-10; *see also, e.g.*, *Millien v. Madison Square Garden Co.*, No. 17 Civ. 4000, 2020 WL 4572678, at *3 (S.D.N.Y. Aug. 7, 2020) (recognizing O&G and YR as having significant experience litigating cases challenging employers' criminal background check policies); *Times v. Target Corp.*, No 18. Civ. 2993, 2019 WL 5616867, at *4 (S.D.N.Y. Oct. 29, 2019) ("The attorneys at O&G and LDF who prosecuted this case are experienced class action and employment lawyers with good reputations among the class action and employment bars and significant experience in litigating criminal history discrimination matters."); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 WL 4316125, at *2 (E.D.N.Y. Sept. 10, 2019) (stating same for O&G and YR); *Little v. Washington Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 422 (D.D.C. 2017) (Collyer, J.) (recognizing class counsel, which included LDF, as adequate in a Title VII challenge to employer's use of criminal background checks, and noting that "class counsel are experienced in class actions and other complex litigation"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248 (S.D.N.Y. 2014) (finding O&G and non-profit partners "bring to the case a wealth of class action litigation experience" and were adequate to represent approximately a half-million person Black and Latino job applicant class in background check litigation); *see also Keels v. Geo Grp., Inc.*, No. 15 Civ. 6261, 2017 WL 4477000, at *1 (E.D.N.Y. Oct. 1 2017) (appointing O&G as class counsel in FCRA case); *Pickett v. SIMOS Insourcing Sols., Corp.*, No. 17 Civ. 1013, 2017 WL 3444755, at *1 (N.D. Ill. Aug. 10, 2017) (appointing O&G as class counsel in FCRA case).

Attorneys' Fees and Costs, dated November 23, 2020 ("Pope Decl."). These highly experienced litigators have endorsed the Settlement and believe that through the steps Defendants have taken, Macy's "will be better able to deliver on [Macy's] commitment to provide employment opportunities to all." *Id.*, Ex. 2 (Settlement Agreement) at 18 ("Agreement Reached in Criminal History Screening Case"). As such, "[t]here is no doubt that proposing counsel teams have extensive experience in the field," and that the Settlement should be presumed to be reasonable. *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 108 (D. Mass. 2010) (internal quotation marks omitted).

## B.      The Settlement Is Substantively Fair.

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 448. The *Grinnell* factors guide district courts in making this determination. They are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463.

Here, the *Grinnell* factors weigh in favor of final approval of the Settlement.

### 1.      Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to summary judgment motions, class certification motions, and trial, Plaintiffs avoid significant expense and delay, and ensure a risk-free recovery for the Settlement Class. "Most class actions are inherently complex and settlement avoids the

costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Here, with an organizational plaintiff, approximately 1,187 Class Members, and fact-intensive Title VII and NYCHRL claims involving the legality of a large, sophisticated retail corporation's job applicant criminal record screening processes, the complexity of this matter supports final approval of this Settlement. Miazad Decl. ¶ 52.

As outlined above, the Parties have exchanged significant discovery and therefore are well informed of the strengths and weaknesses of their respective claims and defenses. Absent settlement, the next step would be numerous depositions, rounds of expert reports, and motion practice on class certification, as well as further dispositive motions. Preparing such motions would be timely and costly as they would require the Parties to conduct multiple depositions, review thousands of documents, and finalize supporting affidavits from Class Members (and potentially prepare and defend Class Member depositions as well). In addition, any judgment on class certification and summary judgment motions likely would be appealed, extending the duration of the litigation. The Settlement, on the other hand, makes monetary and programmatic relief available to Class Members in a certain, prompt, and efficient manner.

2.      **The Reaction of the Class Supports Final Approval (*Grinnell* Factor 2).**

The Class Notice sent to the 1,187-person Class included a detailed explanation of the monetary and programmatic relief, as well as their right to exclude themselves or object to the Settlement. Miazad Decl. ¶ 42. In response, as of November 20, 2020, no Class Member has objected to the Settlement, and only one Class Member has opted out of the Settlement, and the Class Representative, Plaintiff Clark, strongly supports it. *Id.* ¶ 44. Moreover, the Parties have

received no notice that anyone will be appearing at the Fairness Hearing to oppose the Settlement. *Id.* ¶ 45.

This favorable response supports final approval. *See Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

There was more than sufficient discovery for the Parties and their counsel to make sound judgments about how to settle the case on reasonable terms. In this context, there is no "require[ment] that discovery be completed, but rather that sufficient discovery be conducted to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107. This factor is met where the parties are "sufficiently informed" even in circumstances of "limited discovery." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 141 (D.P.R. 2010).

The Parties' litigation efforts and discovery here meet this standard. As outlined above, the litigation thus far has been an aggressive effort by both parties, including multiple motions to dismiss and multiple amended complaints. Before commencing settlement negotiations, Macy's produced substantial information to Class Counsel, including relevant documents regarding Macy's' applicant screening policies and trainings and extensive applicant databases. Miazad Decl. ¶¶ 17-30. This exchange of information and data allowed the Parties to have the critical information they needed to value the case and make an informed decision on settlement.

Given the extent of the discovery that occurred and the detailed information the Parties used to negotiate the settlement, the Parties clearly had "sufficient discovery . . . to make an intelligent judgment about settlement." *Hochstadt*, 708 F. Supp. 2d at 107.

14

**4.    Plaintiffs Would Face Substantial Risks if the Case Proceeded (_Grinnell_ Factors 4 and 5).**

Although Plaintiffs believe their claims have merit, they also recognize that they would face significant legal and procedural obstacles in establishing liability and recovering damages on their claims.  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  _In re Ira Haupt & Co._, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

Establishing both liability and damages would require significant and complicated factual discovery.  Defendants have already filed multiple motions to dismiss, one of which is presently fully briefed and pending, asserting that some of the Macy's entities were not appropriate defendants in this action.  Although Plaintiffs are confident that they would have prevailed in opposing these arguments, they may have been required to undertake additional jurisdictional discovery regarding Defendants' corporate structures and relationship in order to hold all of the corporate defendants liable.

Moreover, while there is supporting case law for bringing and succeeding in Title VII disparate impact claims involving criminal background checks, _see, e.g._, _Houser v. Pritzker_, 28 F. Supp. 3d 222 (S.D.N.Y. 2014), such claims are not without risk and often involve a fact-intensive inquiry and expert discovery.  _Cf. Delmoral v. Credit Prot. Ass'n, LP_, No. 13 Civ. 242, 2015 WL 5793311, at *6 (E.D.N.Y. Sept. 30, 2015) (denying class certification in FDCPA case). In addition, Defendants have indicated that if litigation were to proceed, they would challenge the basis for Fortune's organizational standing, which may require additional discovery and motion briefing.  _See_ ECF No. 61 (Answer), Defenses No. 1.  Plaintiffs would also have to undertake class-wide discovery to establish their Fair Chance Act claims.  Finally, Plaintiffs would face risks as to class certification and summary judgment even after a lengthy discovery

15

process.  After surviving those certification and dispositive motions, a trial on the merits would involve significant risk as to both liability and damages.

In contrast to these known risks, the programmatic and monetary relief offered in this Settlement remedies the injustice at the very heart of the litigation: leveling the playing field for individuals with criminal records who seek a fair chance at employment opportunities.  In light of the strengths and weaknesses of the case, the Settlement achieves significant benefits for the Class in a case where failure at trial is a possibility.

 5. **Managing the Class Through Trial Would Not Be Simple (_Grinnell_ Factor 6).**

The risk of obtaining class certification pursuant to Rule 23(b)(3) and maintaining certification through trial militates in favor of settlement.  Prior to preliminary approval briefing, the Court had not yet certified a class and such a determination would likely be reached only after extensive briefing by both parties.  Macy's likely would argue that individual questions preclude class certification, including whether Class Members were qualified for and would have been offered employment for the positions to which they applied and the expected compensation.  Macy's would likely also point to the difficulty of proving damages.  Should the Court certify a class, Macy's likely would challenge certification and move to decertify, requiring another round of briefing.  Macy's may also seek permission to file an interlocutory appeal under Rule 23(f).  Risk, expense, and delay are necessarily involved in such a process.  Settlement of these claims ensures that the Class avoids these associated risks and delays.

**6.      There Is Significant Risk That Defendants Cannot Withstand a Greater Judgment (Factor 7).**

Like many retail establishments, Defendants are currently experiencing significant financial uncertainty stemming from the ongoing COVID-19 pandemic.[3]  As many other well-established retail chains file for bankruptcy, there is a risk that Macy's may follow the same path.[4]  There is therefore significant risk that Defendants would be unable to withstand a greater judgment if the litigation were to proceed.  However, even if Defendants regain financial stability, the "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9.

Here, the settlement eliminates the risk that Plaintiffs and Class Members may not recover anything if Defendants are forced into bankruptcy like some of their competitors.  The Settlement ensures that Defendants will promptly transfer the full settlement amount to the Settlement Administrator within 14 days of the Effective Date.  Miazad Decl., Ex. 2 (Settlement Agreement) § 3.1(B).  Accordingly, this factor favors settlement approval.

**7.      The Settlement Is Substantial in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).**

The relief provided in the Settlement is comprehensive and targeted to the harm addressed in this litigation.  It provides for monetary compensation for Plaintiffs and every Class

---

[3]     *See* Doug Whiteman, *These Chains Are Permanently Closing the Most Stores in 2020*, MoneyWise (Aug. 12, 2020), https://moneywise.com/a/chains-closing-the-most-stores-in-2020 (listing Macy's, among other stores); *see also* Dan Primack, *Macy's dodges bankruptcy by securing $4.5 billion in financing*, Axios (June 10, 2020), https://www.axios.com/macys-financing-bankruptcy-9e973693-6cd9-4ad7-bf26-0914dbaeb7fc.html.
[4]     *See* Jordan Valinsky, *Big Chains Filed for Bankruptcy and Closed Stores Every Week in July. Here Are 9 of Them*, CNN Business (July 27, 2020, 9:00 A.M.), https://www.cnn.com/2020/07/25/business/july-bankruptcies-coronavirus/index.html.

Member from the class settlement fund of $1,750,000.00, as well as ensures a fair criminal history screening process going forward.

Through this settlement, all Class Members are entitled to a pro rata share of the Net Settlement Fund—which Class Counsel estimates will result in a net award of at least $900 per person—as compensation for their claim.  Miazad Decl. ¶ 48.  This is an excellent class recovery, particularly given the litigation risks faced by Class Members and the fact that they had a low probability of actually being hired even if they had been able to successfully submit their applications.  Significantly, there are no barriers to receiving this monetary relief, such as onerous claims forms; instead, any Class Member who does not opt out of the settlement will receive a share.  Such a recovery is larger than what courts have found to be a reasonable recovery in other similar claims involving consumer background checks.  *See, e.g.*, *White v. First Am. Registry, Inc.*, No. 04 Civ. 1611, 2007 WL 703926, at *2 (S.D.N.Y. Mar. 7, 2007) (finally approving payments up to $100 for class members who submit claims subject to *pro rata* reduction if total claims exceed available balance after deduction of settlement expenses for claims alleging violations of the FCRA); *Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 470, 477 (W.D. Va. 2011) (finally approving proportional payments up to $100, but no less than $2, for class members who submit claim forms alleging violations of the FCRA).[5]

Beyond the cash payments, the Settlement requires Macy's to undertake substantial programmatic changes that benefit all Class Members and future applicants who have faced challenges in their efforts to gain meaningful employment because of their criminal records.

---

[5]    *See also Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 238, 2016 WL 1070819, at *2, *6 (E.D. Va. Mar. 15, 2016) (finally approving settlement of FCRA action where class members would receive either $35 or $75 dollars); *Syed v. M-I LLC*, No. 14 Civ. 742, 2016 WL 310135, at *2, *8-9 (E.D. Cal. Jan. 26, 2016) (same, where class members would receive approximately $16).

Most directly, Defendants have agreed to drop the requirement that applicants to New York City stores consent to a background check as part of the application process. Miazad Decl., Ex. 2 (Settlement Agreement) § 3.4(C). Further, for applicants with criminal histories, Defendants have also agreed to make further changes to their criminal history screening policies and processes following review by an independent expert. *Id.* § 3.3. These changes will greatly benefit Class Members who remain interested in employment at Macy's, one of the largest retail companies in the country.

Weighing the benefits of settlement against the risk associated with proceeding in the litigation, the Settlement is more than reasonable. The remedies provided for in the Settlement are specifically tailored to target the alleged harms challenged in the litigation. When, as here, settlement assures immediate relief to class members tailored to the alleged harms, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" the settlement should be found reasonable. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004)).

In sum, the *Grinnell* factors—including Plaintiffs' well-developed understanding of the strengths and weaknesses of the case and the significant risks, expense, and delay of further litigation—support a finding that the Settlement is fair, adequate, and reasonable.

## III.   Final Certification of the Settlement Class under Rule 23(b)(3) Is Appropriate.

On September 4, 2020, the Court preliminarily certified the Settlement Class. ECF No. 105. Specifically, this Court held:

> (b) The Settlement Class is so numerous that joinder of all members is impracticable;

(c) There are questions of law or fact common to the members of the Settlement Class;
(d) The claims of Patrick Clark are typical of the claims of the other members of the Settlement Class;
(e) Plaintiff Clark is capable of fairly and adequately protecting the interests of the members of the Settlement Class, in connection with the Settlement Agreement;
(f) Common questions of law and fact predominate over questions affecting only individual members of the Settlement Class;
(g) The Settlement Class is ascertainable;
(h) Resolution of the claims in this Action by way of settlement is superior to other available methods for the fair and efficient resolution of the claims of the Settlement Class.

*Id.* at 2-3. This Court also designated Plaintiff Michael Clark as Class Representative of the Settlement Class for purposes of settlement, and appointed Outten & Golden LLP ("O&G"), NAACP Legal Defense and Educational Fund, Inc. ("LDF"), and Youth Represent ("YR") as Class Counsel. *Id.* at 3.

Since that time, nothing has changed to alter the propriety of the Court's certification, and for all the reasons stated in Plaintiffs' Motion for Preliminary Approval, incorporated herein by reference, Plaintiffs now request that the Court grant final approval of: the certification of the Class for purposes of effectuating the Settlement, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiff Clark as Class Representative; and appointment of O&G, LDF, and YR as Class Counsel.

## IV.     The Class Notice Satisfies Rule 23.

Pursuant to Rule 23(c)(2)(B), the notice must provide:

the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Class Notice here satisfied each of these requirements and complied with the procedures set forth in the Court's Preliminary Approval Order.  ECF No. 105.  The Class Notice explained the Class Member monetary and programmatic relief, as well as the settlement payment to Fortune, the service award to Plaintiff Clark, and the allocation of attorneys' fees and costs.  Miazad Decl. ¶ 42.  The Class Notice also provided specific information regarding the date, time, and place of the final approval hearing and how to object to or exclude oneself from the settlement.  This information was adequate to put class members on notice of the proposed settlement and was well within the requirements of Rule 23(c)(2)(B).  ECF No. 105.

Class Counsel's efforts to ensure that Class Members received notice of the proposed settlement have been exhaustive.  First, the Parties retained Analytics LLC, an established firm specializing in class action settlement administration.  Miazad Decl. ¶ 41.  Analytics LLC sent the Class Notice by First-Class U.S. Mail and e-mail to Class Members.  *Id.* ¶ 42.  The settlement administrator ran electronic searches to determine any new or alternative address for the Class Members whose Class Notice were returned as undeliverable, and re-mailed 62 notices.  *Id.* ¶ 43. The Class Notice was e-mailed to 1,187 Class Members, and 43 emails returned bouncebacks. *Id.*  Only four individuals had both their mail and email notices returned as undeliverable.  *Id.* These extensive efforts resulted in approximately 99.66% of Class Members (1,183) receiving a copy of the notice at at least one address that was not undeliverable.  *Id.*

In sum, the dissemination of the Class Notice complied fully with the Rule 23 requirements.

## CONCLUSION

For the reasons stated herein, in Plaintiffs' Memorandum of Law in Support of

Preliminary Approval, and in the proposed Order granting final approval, Plaintiffs respectfully

request that the Court enter an order granting final approval to the Parties' settlement and

granting final certification to the proposed Settlement Class.

Dated:  November 24, 2020
      New York, New York

                           Respectfully submitted,

                           By:   */s/ Ossai Miazad*
                           **OUTTEN & GOLDEN LLP**
                           Ossai Miazad
                           Lewis Steel
                           Chauniqua D. Young
                           Maya S. Jumper
                           Michael C. Danna
                           685 Third Avenue, 25th Floor
                           New York, New York 10017
                           Telephone: (212) 245-1000

                           **NAACP LEGAL DEFENSE**
                           **AND EDUCATIONAL FUND, INC.**
                           Rachel Kleinman
                           40 Rector Street, 5th Floor
                           New York, New York 10006

                           Coty Montag (admitted *pro hac vice*)
                           Jason Bailey (admitted *pro hac vice*)
                           700 14th Street NW, Suite 600
                           Washington, DC 20005
                           Telephone: (202) 216-5573

                           **YOUTH REPRESENT**
                           Michael Pope
                           Eric Eingold
                           Dale Ventura
                           11 Park Place, Suite 1512
                           New York, NY 10007
                           Telephone: (646) 759-8080

                           *Attorneys for Plaintiffs and the Class*