## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE FORTUNE SOCIETY, INC., on behalf of itself and its participants, and MICHAEL CLARK, on behalf of himself and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>MACY'S, INC., MACY'S RETAIL HOLDINGS, INC. d/b/a MACY'S, and MACY'S CORPORATE SERVICES, INC.,<br><br>       Defendants. | Case No. 19-cv-05961-RA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARD AND CLASS COUNSELS' FEES AND COSTS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 3

I.      Contributions Made by Plaintiff Clark .............................................................. 3

II.     Class Counsel's Work In Service to the Class.................................................... 4

ARGUMENT ............................................................................................................. 7

I.      A $5,000 Service Award to Plaintiff Clark Is Reasonable and Should Be Approved........ 7

      A.     Plaintiff Clark Expended Significant Time and Effort Critical to the
Settlement, Adding Important Value to the Case. .................................. 8

      B.     The Ultimate Recovery Supports the Requested Award. ..................... 10

      C.     Plaintiff Clark Assumed Risk by Participating in this Case. ............... 11

      D.     The Extensive Mediations Overseen by an Experienced Mediator Reduces
the Risk of Collusion Between the Parties.......................................... 13

II.     Class Counsel's Request for Fees in the Amount of One-Third of the Settlement Fund Is
Reasonable. ......................................................................................... 14

      A.     Plaintiffs Seek Recovery Under Statutes That Provide for Fee Shifting. ............. 14

      B.     The Court Should Evaluate the Settlement Agreement's Fee Provision
Using the Percentage of the Fund Method........................................... 15

            1.     Class Counsel have Expended Extensive Time and Labor on this Case of
the Highest Quality (*Goldberger* Factors 1 and 4). .................................. 17

            2.     The Magnitude and Complexity of this Litigation, and the Risk Class
Counsel took in Prosecuting Plaintiffs' Civil Rights Claims, Warrant the
Requested Attorneys' Fees (*Goldberger* Factors 2 and 3)....................... 21

            3.     The Requested Fees are Reasonable in Relation to the Settlement
(*Goldberger* Factor 5). ............................................................................ 23

            4.     Public Policy Considerations Support the Reasonableness of Class
Counsel's Requested Fees (*Goldberger* Factor 6). ................................... 24

III.    Class Counsel are Entitled to Reimbursement of Costs.................................... 25

CONCLUSION........................................................................................................ 26

# TABLE OF AUTHORITIES

**CASES**                                                     **PAGE(S)**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
　522 F.3d 182 (2d Cir. 2007)........................................................................17, 19

*In re Austrian & German Bank Holocaust Litig.*,
　80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................22

*Bazignan v. Team Castle Hill Corp.*,
　No. 13 Civ. 8382, 2015 WL 1000034 (S.D.N.Y. Mar. 5, 2015) ...........................19

*Beckman v. KeyBank, N.A.*,
　293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................20, 25

*Grace v. Ludwig*,
　484 F.2d 1262 (2d Cir. 1973)..............................................................................24

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)................................................................................21

*Clark v. Ecolab Inc.*,
　Nos. 07 Civ. 8623, 04 Civ. 4488, 06.....................................................................9

*In re Colgate-Palmolive Co. ERISA Litig.*,
　36 F. Supp. 3d 344 (S.D.N.Y. 2014).....................................................................9

*de Munecas v. Bold Food, LLC*,
　No. 09 Civ. 440, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) ...........................24

*Deposit Guar. Nat'l Bank v. Roper*,
　445 U.S. 326 (1980)............................................................................................24

*Dupler v. Costco Wholesale Corp.*,
　705 F. Supp. 2d 231 (E.D.NY. 2010) ...................................................................9

*Frank v. Eastman Kodak Co.*,
　228 F.R.D. 174 (W.D.N.Y. 2005).................................................................. *passim*

*Fresno County Emps. Ret. Ass'n v. Isaacson*,
　925 F.3d 63 (2d Cir. 2019)..................................................................................16

*In re Gilat Satellite Networks, Ltd.*,
　No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)..........................23

*Gilliam v. Addicts Rehab. Ctr. Fund*,
　No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ...........................23

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)............................................................................................ *passim*

*Gonzalez v. Pritzker*,
  No. 10 Civ. 3105, 2016 WL 5395905 (S.D.N.Y. Sept. 20, 2016) .............................................7

*Guippone v. BHS&B Holdings, LLC*,
  No. 09 Civ. 1029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ...........................................12

*Henry v. Little Mint, Inc.*,
  No. 12 Civ. 3996, 2014 WL 2199427 (S.D.N.Y. May 23, 2014)...........................................12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................................................14

*Hernandez v. Merrill Lynch & Co.*,
  No. 11 Civ. 8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) .....................................7, 23

*Hicks v. Stanley*,
  No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................23

*Houser v. Pritzker*,
  28 F. Supp. 3d 222 (S.D.N.Y. 2014).....................................................................................22

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)....................................................................................25

*Johnson v. Brennan*,
  No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. 2011) ...................................................13, 16

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .................................................................................................17

*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005)...................................................................................................15

*Kelly v. Brooklyn Events Ctr., LLC*,
  No. 17 Civ. 4600, 2019 WL 4316125 (E.D.N.Y. Sept. 10, 2019).........................................19

*Khait v. Whirlpool Corp.*,
  No. 06 Civ. 6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................8, 9

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. 2014) ...........................................................................................13

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......................................16

iii

*Maley v. Del Global Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................15

*Massiah v. MetroPlus Health Plan, Inc.*,
　No. 11 Civ. 05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)..........................................7

*Masters v. Wilhelmina Model Agency, Inc.*,
　473 F.3d 423 (2d Cir. 2007)...........................................................................7

*Mohney v. Shelly's Prime Steak*,
　No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ....................................8, 23

*Newman v. Piggie Park Enters., Inc.*,
　390 U.S. 400 (1968)..................................................................................14

*Norwest Fin., Inc. v. Fernandez*,
　121 F. Supp. 2d 258 (S.D.N.Y. 2000)..................................................................19

*Nunez v. Francis Deli Grocery*,
　No. 13 Civ. 4894, 2015 WL 1963630 (S.D.N.Y. Apr. 30, 2015)..........................................19

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
　No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) .......................................10, 20

*Pearlman v. Cablevision Sys. Corp.*,
　No. 10 Civ. 4992, 2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019)....................................9, 13

*In re Penthouse Exec. Club Comp. Litig.*,
　No. 10 Civ. 1145, 2013 WL 1828598 (S.D.N.Y. 2013) ...............................................13

*Perez v. AC Roosevelt Food Corp.*,
　744 F.3d 39 (2d Cir. 2013)...........................................................................15

*Phillips Petrol. Co. v. Shutts*,
　472 U.S. 797 (1985)..................................................................................24

*Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*,
　297 F.3d 253 (3d Cir. 2002)..........................................................................21

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
　912 F. Supp. 97 (S.D.N.Y. 1996) ....................................................................21

*Reyes v. Altamarea Grp., LLC*,
　No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ...................................7, 25

*Roberts v. Texaco, Inc.*,
　979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................8, 9

*Rozell v. Ross-Holst*,
  576 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................................................19

*Sand v. Greenberg*,
  No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010).....................................................24

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)................................11, 16, 18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................16

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) .........................................................................................8

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)................................................................................16, 24

*Thornton v. East Texas Motor Freight*,
  497 F.2d 416 (6th Cir. 1974) ...............................................................................................8

*Times v. Target Corp.*,
  No 18. Civ. 2993, 2019 WL 5616867 (S.D.N.Y. Oct. 29, 2019) .......................................9, 18

*Tiro v. Pub. House Invs., LLC*,
  Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949 (S.D.N.Y. Sept. 10,
  2013) ...............................................................................................................................12

*Torres v. Gristede's Operating Corp.*,
  No. 04 Civ. 3316, 2012 WL 3878144 (S.D.N.Y. Aug. 6, 2012) ...........................................26

*Velez v. Majik Cleaning Serv., Inc.*,
  No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)...........................................7

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)............................................................................................16, 17

*Willix v. Healthfirst, Inc.*,
  No. 07 Civ. 1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011).............................................9

*Yuzary v. HSBC Bank USA, N.A.*,
  No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ...........................................26

**Statutes**

42 U.S.C. § 2000e–5(k) .........................................................................................................1, 14

N.Y. Corr. Law § 753(1)(a) ...................................................................................15, 24, 25

**Other Authorities**

N.Y.C. Admin. Code § 8-101 ...........................................................................................15

N.Y.C. Admin. Code § 8-502(g)....................................................................................1, 14

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of*
   *Incentive Payments to Named Plaintiffs in Employment Discrimination Class*
   *Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006) .................................................................8

## INTRODUCTION

Following this Court's preliminary approval of the Parties' settlement, and in conjunction with Plaintiffs' Motion for Final Approval of Settlement and Certification of the Settlement Class ("Final Approval"), Plaintiffs respectfully move this Court to approve a class representative service award and the requested attorneys' fees and costs associated with the successful prosecution of this important racial and social justice case.

First, a service award of $5,000 to Settlement Class Representative Michael Clark ("Plaintiff Clark") is appropriate in recognition of the valuable services he rendered on behalf of the Class. The proposed award is reasonable in light of the relevant precedent, the time and effort Plaintiff Clark spent in furtherance of this public interest matter, the result he helped obtain, and the lack of evidence of any collusion between counsel.

Second, Class Counsel requests that the Court award $583,333 in attorneys' fees, plus out-of-pocket costs and expenses of $37,989, representing a portion of the fees Class Counsel have incurred in ensuring a fair criminal history screening process for one of the nation's largest retail companies, Macy's, Inc. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k) ("Title VII"); N.Y.C. Admin. Code § 8-502(g). Class Counsel's fees and costs request is fair and reasonable. The requested attorneys' fees represent one-third of the $1,750,00 monetary settlement for the Class.[1] This is the percentage to which the named Plaintiffs agreed in their

---

[1] In the settlement agreement, attached as Exhibit 2 to the Declaration of Ossai Miazad in Support of Motion for Final Approval of the Class Action Settlement and Certification of the Settlement Class and Motion for Approval of Service Award and Class Counsel Fees' and Costs ("Miazad Decl."), the Parties agreed to a total monetary settlement of $1,800,000, separate from the extensive injunctive relief. Of that amount, $1,750,000 is the Class settlement, which represents monetary awards to Settlement Class Members, a service award of $5,000 to Plaintiff Clark, Court-approved attorneys' fees and costs, and the costs of settlement administration if those costs exceed $10,000. *See* Miazad Decl., Ex. 2 (Settlement Agreement) §§ 1.16, 1.20, 3.4(B). Additionally, the Parties negotiated a settlement payment of $50,000 to Fortune in

retainer agreements if the case was settled on a collective or individual basis and is in line with attorneys' fees awarded in this Circuit for civil rights discrimination cases.  Miazad Decl. ¶ 65.

Outten & Golden LLP ("O&G"), NAACP Legal Defense and Educational Fund, Inc. ("LDF"), and Youth Represent ("YR"), as Class Counsel, have been without compensation, and their entitlement to payment has been wholly contingent upon achieving a good result.  *See id.* ¶ 66.  Class Counsel have spent approximately 1,969.8 attorney, paralegal, and support staff hours investigating, litigating, and negotiating the settlement of this case.  Miazad Decl. ¶¶ 67, 69; Decl. of Coty Montag in Supp. of Pls.' Unopposed Mots. for Final Approval of Settlement and Certification of the Settlement Class, Approval of Attorneys' Fees and Costs, and Approval of Service Award, dated November 24, 2020 ("Montag Decl.") ¶ 24; Decl. of Michael Pope in Supp. of Pls.' Unopposed Mots. for Final Approval of Class Settlement, Service Award, and Attorneys' Fees and Costs, dated November 23, 2020 ("Pope Decl.") ¶¶ 14, 17.  Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $941,855.  Miazad Decl. ¶¶ 67, 69; Montag Decl. ¶ 25; Pope Decl. ¶¶ 15, 17.  The requested fee represents only 62% of Class Counsel's actual lodestar to date.  Miazad Decl. ¶ 68.

Lastly, Class Members were apprised of this request for a service award and attorneys' fees and costs in the Court-approved Notice of Class Action Settlement ("Notice") and no Class Member objected.  *Id.* ¶¶ 44, 70.

For the reasons set forth below, Plaintiffs submit that the attorneys' fees and costs Class Counsel seek are fair and reasonable under the applicable legal standards, and should be awarded

---

exchange of a release of its claims for individual harm alleged in the complaint for Fortune having been forced to infuse resources into additional programs and services to assist its participants who are adversely affected by Defendants' violation of the NYCHRL.  *See* Fourth Amend. Compl. ¶¶ 4, 26, 103-18.

in light of the contingency risk undertaken, the significant societal interest in encouraging the employment of individuals with criminal histories, and the substantial result achieved in this case.

**FACTUAL BACKGROUND**

For a detailed statement of this case's history, including the pleadings, class litigation, and settlement negotiations, Plaintiffs refer the Court to their Memorandum of Law in Support of Final Approval, filed contemporaneously with the current motion.  This factual background will focus on the work and contributions of the Class Representative and Class Counsel.

**I.     Contributions Made by Plaintiff Clark**

Plaintiff Clark made important contributions to the prosecution and fair resolution of this action on behalf of the Class.  Miazad Decl. ¶ 53.  Plaintiff Clark joined the lawsuit at a critical juncture—when Plaintiffs were amending their complaint and probing the issues central to their allegations regarding Macy's application process, criminal history screening policies and practices, and rejection of applicants who refused to consent to a background check prior to a conditional offer of employment.  *Id.* ¶ 54.

Based on thorough interviews and in-depth discussions, Plaintiff Clark's experience with Macy's' application process became integral to Plaintiffs' amended complaint and concretized their understanding of the harm inflicted on applicants who declined to consent to a criminal background check prior to a conditional offer of employment.  *Id.* ¶ 55.  Because of his participation, the Class claims were much stronger in the subsequent complaint, which helped bring the Parties together for settlement negotiations soon after its filing.  *Id.* ¶ 56.

Plaintiff Clark also assisted Class Counsel throughout the intensive, eight-month negotiation period, including answering questions in preparation for the mediation on January

10, 2020.  *Id.* ¶ 57.  Plaintiff Clark also produced documents upon the request of Defendants, including screenshots of the questions he was asked as part of Macy's' application process.  *Id.* ¶ 58.

In the summer of 2020, the Parties executed a settlement term sheet and began the process of finalizing the settlement.  Plaintiff Clark reviewed and discussed the settlement terms with Counsel.  *Id.* ¶ 59.  In sum, Plaintiff Clark's assistance to Class Counsel in the investigation, prosecution, and settlement of the Title VII and NYCHRL Fair Chance Act claims was critical to the success of this settlement.  *Id.* ¶ 60.

Lastly, the Court-approved Notice that was sent to Class Members informed them that Plaintiffs would request a service award for Plaintiff Clark.  *Id.* ¶ 61.  No Class Member has opposed the proposed service award to Plaintiff Clark.  *Id.*

In sum, Plaintiff Clark contributed significantly to the success of this public interest matter.

## II.   <u>Class Counsel's Work In Service to the Class</u>

Class Counsel, who are well-aware of the complexity of criminal record and race discrimination cases like this one, and the value of early collaborative settlement discussions, sent counsel to Macy's a letter on November 7, 2016 advising them of Plaintiffs' claims.  *Id.* ¶ 9. Prior to sending this correspondence, Class Counsel engaged in a substantial investigation that included review of their clients' facts and documents, legal research, interviews of potentially impacted applicants, and research into Macy's' background check practices.  *Id.* ¶ 10.  Through this process, Class Counsel learned that many individuals who were adversely impacted by Macy's' criminal history screen were also subject to forced arbitration agreements containing class action waivers.  *Id.* ¶ 11.  The Parties were unable to arrive at a pre-suit resolution, and

Class Counsel filed a detailed charge of discrimination on behalf of Fortune with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 15, 2017.  *Id.* ¶ 12.  Counsel assisted and cooperated with the EEOC investigation over the course of nearly two years.  *Id.* ¶ 14.  On April 2, 2019, the EEOC issued Fortune a Notice of Right to Sue.  *Id.* ¶ 15.  On May 6, 2019, Class Counsel again wrote to Macy's' counsel to inform them of Plaintiffs' intention to file suit. *Id.* ¶ 16.  Plaintiffs filed suit on June 26, 2019.

As detailed in Plaintiffs' Final Approval Motion, the pleading stage of this case was heavily litigated.  Plaintiffs amended their complaint three times, adding a new named plaintiff and new claims based on information learned through their investigation and from Macy's' disclosures.  *Id.* ¶¶ 17-24.  Defendants moved to dismiss twice, and only after several months of this dispositive motion practice did the Parties agree to begin settlement negotiations.  *Id.*

Once the Parties agreed to mediate, they conferred frequently to choose a mediator and negotiate the written discovery necessary for informed negotiations.  *Id.* ¶¶ 25-26.  The Parties then engaged in substantial written discovery.  They first negotiated a discovery plan regarding the documents and information the Parties required to support their settlement analyses and positions.  *Id.*  After reaching agreement, the Parties exchanged voluminous documents and information, including over a thousand pages of documents.  *Id.* ¶ 27.  Macy's' production included policy documents, personnel files, guidelines, training materials, and other documents, as well as spreadsheets containing hundreds of thousands of rows of applicant data, all of which Class Counsel had to read, digest, and analyze.  *Id.*  Class Counsel also ensured that Macy's' request for data from Plaintiff Clark was appropriate and reviewed and produced documents in his possession.  *Id.* ¶ 28.  Class Counsel additionally retained the services of and worked closely

with a statistical expert to analyze Macy's' personnel data production, to prepare for mediation. *Id.* ¶¶ 29-30.

Only after analyzing the data and understanding fully the targeted policies and practices did the Parties attend a comprehensive day-long mediation with an experienced mediator, Hunter Hughes, on January 10, 2020.  *Id.* ¶ 31.  In advance of mediation, Class Counsel prepared a detailed mediation brief outlining Plaintiffs' evaluations of the strengths and weaknesses of the claims at issue.  *Id.* ¶ 33.

The mediation negotiations between the Parties resulted in an agreement for: a monetary payment to all Class Members for their monetary claims; a service award for Plaintiff Clark for his contributions to the Class; and a separate settlement payment to Fortune for the organization's separately alleged harm in the amended complaint (*i.e.*, being forced to infuse resources into additional programs and services to assist its participants who are adversely affected by Defendants' violation of the NYCHRL).  *Id.* ¶ 34; Fourth Amend. Compl. ¶¶ 4, 26, 103-18.

Class Counsel then spent several months negotiating the terms of the injunctive relief. Following six months of arm's-length negotiations between the Parties and with the continued assistance of Mr. Hughes, the Parties executed a settlement term sheet on July 6, 2020.  Miazad Decl. ¶¶ 35-36.  Class Counsel then continued to negotiate and finalize a full settlement agreement with Defendants, which was fully executed on August 31, 2020.  *Id.* ¶ 37.

Since executing the settlement agreement, Class Counsel has spent significant time responding to Class Member questions regarding the settlement terms, working with the settlement administrator to ensure notice was timely and accurately issued, and securing preliminary approval of the settlement.  *Id.* ¶ 77.

## ARGUMENT

### I.   A $5,000 Service Award to Plaintiff Clark Is Reasonable and Should Be Approved.

The requested service award is reasonable given the significant contributions that Plaintiff Clark made to the investigation, negotiation, and resolution of the case.

Courts, including the Second Circuit, consistently hold that in class actions, named plaintiffs may appropriately receive service awards as compensation for the work they perform and the serious risks they bear for the benefit of the class. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 430 (2d Cir. 2007) (affirming, in part, district court's decision that granted incentive awards to named plaintiffs, trial witnesses, and class representatives; recognizing the awards were "related to the individual's personal risk and additional efforts to benefit the lawsuit"); *see also Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (citing cases).

"Service awards are common in class action cases." *Gonzalez v. Pritzker*, No. 10 Civ. 3105, 2016 WL 5395905, at *5 (S.D.N.Y. Sept. 20, 2016) (citing *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011)); *see also Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012). Courts acknowledge that named plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g.*, *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)) (internal quotation marks omitted); *see generally*

7

Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

Courts have also justified service payments based on the need to encourage litigants to bring class actions, furthering the public policy underlying the statutory scheme. *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) ("We also think there is something to be said for rewarding those [employees] who protect and help to bring rights to a group of employees who have been the victims of [employer wrongdoing]."); *see also In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award because named plaintiffs "rendered a public service" and "conferred a monetary benefit" on the shareholder class).

In examining the reasonableness of service payments, district courts in this Circuit consider several factors including: (1) the time and effort expended by the plaintiffs in assisting the prosecution of the case or in bringing added value; (2) the ultimate recovery in vindicating statutory rights; (3) the personal risk incurred by the plaintiffs; and (4) the potential for collusion between the parties. *See Frank*, 228 F.R.D at 174; *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997).

A.      **Plaintiff Clark Expended Significant Time and Effort Critical to the Settlement, Adding Important Value to the Case.**

Courts recognize that service awards are "important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (citing *Mohney v. Shelly's Prime Steak*, No. 06 Civ. 4270, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009);

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200-01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.")); *see also Times v. Target Corp.*, No 18. Civ. 2993, 2019 WL 5616867, at *4 (S.D.N.Y. Oct. 29, 2019) (approving $2,500 to one plaintiff and $20,000 to another); *Pearlman v. Cablevision Sys. Corp.*, No. 10 Civ. 4992, 2019 WL 3974358, at *7 (E.D.N.Y. Aug. 20, 2019) (citing *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)) (awarding $15,000 service awards each to five named plaintiffs and $10,000 service awards each to ten other named plaintiffs); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245-46 (E.D.NY. 2010) (finding enhancement awards of $25,000 to one plaintiff and $5,000 to a second plaintiff reasonable based on the participation of the two individuals in the action to date); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (finding service awards of $30,000, $15,000, and $7,500 to various plaintiffs to be reasonable); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Div. 5672, 2010 WL 1948198, at *9 (S.D.N.Y. May 11, 2010) (awarding $10,000 service awards each to seven class representatives).

Specifically, named plaintiffs bring important factual knowledge to employment class actions, including information about employer hiring policies and practices that affect applicants. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 354 (S.D.N.Y. 2014) (recognizing efforts of plaintiffs, including time spent reviewing draft pleadings and motions,

searching for and producing documents, reviewing filings, and regular communications with
counsel); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960,
at *1 (S.D.N.Y. Feb. 9, 2010) (awarding service payments where plaintiffs met with counsel,
reviewed documents, formulated case theory, identified and located other class members, and
attended court proceedings); *Frank*, 228 F.R.D. at 187 (recognizing that plaintiffs are the
"primary source of information concerning the claims").

As discussed above, Plaintiff Clark contributed significant time and effort to the case by:
providing Class Counsel with factual information regarding application and criminal background
record processes; providing relevant documents in his possession; assisting during months of
investigation and negotiation period; helping Class Counsel to prepare for mediation and being
available to speak to Class Counsel to assist in the factual investigation and settlement
negotiations.  Miazad Decl. ¶¶ 53-63.  Moreover, Plaintiff Clark added important value by being
a Class Representative needed for the applicant class.  *Id.* ¶ 60.

Plaintiff Clark's time, efforts, and contributions on behalf of the Class support the
requested service payment.

### B.   The Ultimate Recovery Supports the Requested Award.

Plaintiff Clark participated in this case because of the importance it has for the almost 1,200
Class Members who unsuccessfully sought jobs at Macy's and were denied because of the
company's unlawful screening question.  *Id.* ¶ 62.  The settlement here will provide far-reaching,
class-wide programmatic relief to correct the hiring practices at Macy's and support applicants
with criminal histories in securing employment.  First, Defendants will revise their job
application to remove any reference to the requirement for a background check for any applicant
in New York City.  *Id.*, Ex. 2 (Settlement Agreement) § 3.4(C).  Next, Defendants have agreed to
retain an expert Industrial Organizational ("IO") psychologist to "review Macy's current

10

criminal history screening and background check policies and practices at Macy's retail stores in New York City in light of the NYCHRL, the New York State Correction Law, and Title VII." *Id.* § 3.3(C); *see also id.* §3.3(E)(1)-(7). Defendants will "make changes that are consistent with the expert's guidance to have a legally compliant program." *Id.* § 3.3(C). Defendants have also agreed to maintain any changes implemented for a minimum of two years and will provide information to Class Counsel regarding their adoption of the expert's guidance. *Id.* § 3.3(G)(1). With regard to monetary relief, Defendants have agreed to pay $1,800,000.00, including $1,750,000.00 into a gross settlement fund, which will provide a settlement award of approximately $900.00 to every Class Member who does not opt out of the suit. *Id.* §§ 1.16, 1.17, 3.1(B).

Given the breadth and importance of the programmatic and monetary relief, and the role Plaintiff Clark had in securing that settlement, a service award of $5,000.00 is reasonable and fair. As cited above, courts routinely approve service payments equal to or greater than the payments requested here.

### C. Plaintiff Clark Assumed Risk by Participating in this Case.

In the workplace context, where workers are often rejected for employment if they are considered "trouble makers," employees who sue employers are particularly vulnerable to retaliation. *See Frank*, 228 F.R.D. at 187-88 (purpose of representative fee includes compensation for the multiple retaliation risks borne in filing suit against former employer); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (citation omitted) (recognizing that plaintiffs "fac[e] potential risks of being blacklisted as 'problem' employees"). "Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny, and that '[service] awards are particularly appropriate in the employment context' where 'the plaintiff is

11

often a former or current employee of the defendant, and thus . . . he has, for the benefit of the

class as a whole, undertaken the risks of adverse actions by the employer or co-workers.'" *Tiro*

*v. Pub. House Invs., LLC*, Nos. 11 Civ. 7679, 11 Civ. 8249, 2013 WL 4830949, at \*11 (S.D.N.Y.

Sept. 10, 2013) (citations omitted).

Although Plaintiff Clark was not an employee of Macy's when he participated in this

case because he was an applicant rejected for employment based on the policies addressed by

this settlement, he nevertheless faced the risk that his current or future employers might

discriminate or retaliate against him for being involved in this case if and when the case and

settlement becomes public knowledge.  Miazad Decl. ¶ 63.

Even where, as here, there has been no actual retaliation, named plaintiffs in

discrimination class actions merit recognition for assuming the potential risk by connecting their

names to the case.  *See Guippone v. BHS&B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL

5148650, at \*7 (S.D.N.Y. Oct. 28, 2011) ("where there is not a record of actual retaliation,

notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of

such for the sake of absent class members"); *Frank*, 228 F.R.D. at 187-88 ("Although this Court

has no reason to believe that [defendant] has or will take retaliatory action towards either [named

plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost

opportunities cannot be dismissed as insincere or unfounded.").

As an entry-level, retail applicant, Plaintiff Clark is especially vulnerable because he is at

the very bottom of the workplace hierarchy and must struggle to find employment in a difficult

economy.  Where, as here, "a low level employee assumes responsibility for prosecuting an

action against an employer and takes considerable personal risk in so doing, [service] awards are

singularly appropriate."  *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at \*10

(S.D.N.Y. May 23, 2014).

### D. The Extensive Mediations Overseen by an Experienced Mediator Reduces the Risk of Collusion Between the Parties.

Lastly, the service payment is reasonable in light of the Parties' extensive settlement negotiations, overseen by a third-party mediator, which supports a finding that the Parties were not in collusion during the settlement process.

Courts find collusion less likely when settlement negotiations are conducted by a third-party mediator. *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2013 WL 1828598, *2 (S.D.N.Y. 2013) (finding proposed class settlement noncollusive, as a settlement "reached with the help of third-party neutrals enjoys a 'presumption that the settlement achieved meets the requirements of due process'") (quoting *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, *8 (S.D.N.Y. 2011)).  Where there is no evidence of "any collusion between counsel," such a finding supports awarding service payments.  *Pearlman v. Cablevision Sys. Corp.*, No. 10 Civ. 4992, 2019 WL 3974358, at *7 (E.D.N.Y. Aug. 20, 2019) ("These awards, along with the rest of the Settlement, were negotiated under Mediator Holwell's supervision, which carries a presumption that the amounts are reasonable and the result of arm's-length negotiations."); *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 180 (S.D.N.Y. 2014) (granting service awards where there "do[es] not appear to have been the result of any collusion between counsel").

Here, the Parties agreed to, and participated in, an ongoing, intensive negotiation period overseen by Mr. Hughes.  Miazad Decl. ¶¶ 31-37.  Throughout the entire process, the Parties met and conferred (via telephone and email) with the mediator to facilitate the settlement discussions. *Id.*  Only after six months of negotiations following the in-person mediation did the Parties finally have an agreement in principle, completing the  settlement term sheet on July 6, 2020.  *Id.* ¶ 36.  Over the following weeks, the Parties negotiated a detailed settlement agreement, and on

August 31, 2020, the Parties executed the settlement agreement.  *Id.* ¶ 37.  Such extensive

negotiation and mediation overseen by a third-party mediator dispels the worry that the

settlement was a produce of collusion and supports the service award requested here.

**II.**      **Class Counsel's Request for Fees in the Amount of One-Third of the Settlement Fund Is Reasonable.**

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their

work on behalf of the Class, negotiating robust programmatic relief, and securing monetary

damages pursuant to the NYCHRL.  As argued below, this request of one-third of the settlement

fund is within the average for fee awards approved by courts, including in this Circuit in similar

cases.  In accordance with the retainer agreements providing for fees at one-third, and case law in

this Circuit, an award of $583,333 in attorneys' fees and reimbursement of actual litigation

expenses is appropriate.

**A.**      **Plaintiffs Seek Recovery Under Statutes That Provide for Fee Shifting.**

The statutes at issue, Title VII and the NYCHRL, are each subject to fee-shifting.  *See* 42

U.S.C. § 2000e–5(k); N.Y.C. Admin. Code § 8-502(g) ("In any civil action commenced pursuant

to this section, the court, in its discretion, may award the prevailing party reasonable attorney's

fees, expert fees and other costs.").

These provisions represent a legislative judgment that individuals with discrimination

claims—like Plaintiffs and the Class Members—should be able to attract effective representation

even if they could not afford a lawyer (or if the claims were relatively small), and to encourage

private enforcement of civil rights statutes, to the benefit of the public as a whole.  *See Newman*

*v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) (attorneys' fees provision enacted to

encourage pursuance of judicial relief); *see also Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983)

(Brennan, J., concurring in part) (fee awards provide "a meaningful opportunity to vindicate"

14

policies (quoting S. Rep. No. 94-1011, at 2)); *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (fee statute enacted in part to prosecute low injury claims).  These rationales apply with full force here, where the value of the claims is relatively low but the public interest in vindicating the civil rights of individuals unfairly denied employment because of their criminal records is high.  *See* N.Y. Corr. Law § 753(1)(a) (describing public policy to "encourage the licensure and employment of persons previously convicted of one or more criminal offenses"); N.Y.C. Admin. Code § 8-101 ("[T]here is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record.").

**B.  The Court Should Evaluate the Settlement Agreement's Fee Provision Using the Percentage of the Fund Method.**

"Class counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services from that settlement fund."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  "What constitutes a reasonable fee is properly committed to the sound discretion of the district court."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In setting a reasonable fee, district court judges may use either "the lodestar or percentage of the recovery methods."  *Id.* at 44.  Under the lodestar method, a "presumptively reasonable fee" is determined based on "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 44 (2d Cir. 2013).  Regardless of the seeming exactitude of the lodestar method, "[t]he trend in this Circuit is toward the percentage method, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003), which 'directly aligns the interests of the class and its counsel and

provides a powerful incentive for the efficient prosecution and early resolution of litigation."
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (quoting *In re Lloyd's
Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *11 (S.D.N.Y. Nov. 26, 2002)).
A common fund percentage fee "may be less than, equal to, or greater than the lodestar." *Fresno
County Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 68 (2d Cir. 2019).

Here, Class Counsel respectfully requests that the Court use the percentage-of-the-fund
method and award fees equal to one-third of the settlement amount for the Class. Class Counsel
negotiated a significant settlement benefitting not just Plaintiff and Class Members, but all
applicants for jobs at Macy's in New York City going forward. A percentage-of-the-fund fee
award will encourage other plaintiffs' lawyers to prosecute important public interest cases like
this one.

The percentage method is also closely aligned with market practices because it mirrors
the practice of contingent fee attorneys who "typically negotiate percentage fee arrangements
with their clients." *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *14 (S.D.N.Y.
Sept. 16, 2011) (quoting *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d
254, 262 (S.D.N.Y. 2003)); *see also Sewell*, 2012 WL 1320124, at *10 ("[The percentage]
method is similar to private practice where counsel operates on a contingency fee, negotiating a
reasonable percentage of any fee ultimately awarded"); *In re Sumitomo Copper Litig.*, 74 F.
Supp. 2d 393, 397 (S.D.N.Y. 1999) (characterizing the percentage approach as "uniquely the
formula that mimics the compensation system actually used by individual clients to compensate
their attorneys").[2]

---

[2]    While LDF, for example, does not charge contingent fees to clients, the percentage
method is appropriate here given the particular contours of this settlement and the work
expended to resolve the claims on behalf of Plaintiffs and the Class.

Regardless of which method is used, courts in this Circuit routinely consider six factors identified by the Second Circuit in *Goldberger* in evaluating the reasonableness of an attorneys' fee award: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *Goldberger*, 209 F.3d at 50).[3]

### 1. Class Counsel have Expended Extensive Time and Labor on this Case of the Highest Quality (*Goldberger* Factors 1 and 4).

As described above, Class Counsel expended significant effort to achieve this settlement. Class Counsel engaged in a substantial investigation that included a thorough study of Macy's' hiring practices and strategizing around how to hold Macy's accountable in light of broad use of arbitration agreements with class action waivers. Before the Parties agreed to discuss settlement, the case was litigated with numerous motions and discovery conferences and thousands of pages of documents produced and analyzed. Miazad Decl. ¶¶ 17-23. Class Counsel also engaged in months of settlement discussions, in coordination with the mediator, to reach agreement. *Id.* ¶¶ 24-37. Thereafter, Class Counsel spent significant time working to secure preliminary approval of the settlement and supervise the notice process.

When applying the percentage method to set an attorney's fee award, as Class Counsel request here, the lodestar method serves as a "cross-check" to ensure the reasonableness of the award. *Goldberger*, 209 F.3d at 50. "[W]here [the lodestar method is] used as a mere cross-

---

[3]     In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2007), the Second Circuit quoted in a footnote twelve factors identified by the Fifth Circuit in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The Second Circuit did not reject its own six-factor test in *Arbor Hill* and Plaintiffs use the simpler *Goldberger* factors here, but the result would be the same under the *Johnson* factors.

check, the hours documented by counsel need not be exhaustively scrutinized by the district

court.  Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity

with the case." *Sewell*, 2012 WL 1320124, at *13 (quoting *Goldberger*, 209 F.3d at 50).

Here, the accompanying attorney declarations set forth the hours of work and billing rates

used to calculate the lodestar.  As described in those declarations, Class Counsel and their staffs

have devoted a total of approximately 1,969.8 hours to this action, resulting in an aggregate

lodestar of $941,855.  Miazad Decl. ¶¶ 67, 69 & Ex. 4 (O&G Fees Summary); Montag Decl.

¶¶ 24-25; Pope Decl. ¶¶ 14-17.[4]  Class Counsel's requested fee of $583,333 represents only 62%

of their actual lodestar to date.  Miazad Decl. ¶ 68.  These hours are more than reasonable for a

case like this one and were compiled from contemporaneous time records maintained by each

attorney, paralegal, and support staff participating in the case.  *Id.* ¶ 72; Montag Decl. ¶ 26; Pope

Decl. ¶ 16.

Very few other plaintiff-side firms or non-profit organizations would have the resources,

interest, and experience to pursue the claims at issue here.  Class Counsel are leaders in

addressing the discriminatory use of criminal histories to deny job opportunities, and have

successfully achieved some of the few other settlements which provided a large number of job

applicants relief for violation of their NYCHRL rights based on their criminal histories.  Miazad

Decl. ¶ 73.  Class Counsel are experienced, highly-regarded members of the plaintiffs'

employment bar with extensive expertise in the areas of class actions and complex litigation

involving discrimination claims, including criminal history claims like those at issue here.  *Id.*

¶ 74; *see also, e.g.*, *Times v. Target Corp.*, No 18. Civ. 2993, 2019 WL 5616867, at *4 (S.D.N.Y.

Oct. 29, 2019) ("The attorneys at O&G and LDF who prosecuted this case are experienced class

---

[4]     Class Counsel are prepared to provide detailed time entries upon request of the Court.

action and employment lawyers with good reputations among the class action and employment

bars and significant experience in litigating criminal history discrimination matters."); *Kelly v.*

*Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 WL 4316125, at *2 (E.D.N.Y. Sept. 10,

2019) (stating same for O&G and YR); *see* Miazad Decl. ¶¶ 4-7 (listing representative class

cases that O&G has successfully prosecuted); Montag Decl. ¶¶ 16-17 (listing representative class

cases that LDF has successfully prosecuted); Pope Decl. ¶¶ 8, 10.  Class Counsel are also leaders

in advocating for reform for discriminatory and unfair criminal history screening policies and

practices by employers.  *See Kelly*, 2019 WL 4316125, at *2; Miazad Decl. ¶¶ 4-7; Montag Decl.

¶¶ 2-17; Pope Decl. ¶¶ 5-10.

 Courts in this circuit have repeatedly approved hourly rates like Class Counsel's as

reasonable.  *See* Miazad Decl. ¶ 78.  Further, the rates sought by Class Counsel are routinely paid

by clients seeking hourly attorney work, including on discrimination matters.  *See id.* ¶ 80; *see*

*Norwest Fin., Inc. v. Fernandez*, 121 F. Supp. 2d 258, 262-63 (S.D.N.Y. 2000) (rejecting

challenge to reasonableness of fee request where counsel provided declaration indicating that

client was "billed on the basis of services provided at fixed hourly rates which were charged at

[counsel's] usual and customary rates"); *see also Nunez v. Francis Deli Grocery*, No. 13 Civ.

4894, 2015 WL 1963630, at *7 (S.D.N.Y. Apr. 30, 2015) (attorney's "customary hourly rate"

among factors to be considered in determining lodestar (quoting *Arbor Hill*, 522 F.3d at 186

n.3)); *Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382, 2015 WL 1000034, at *4

(S.D.N.Y. Mar. 5, 2015) (same); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008)

(stating that actual rates charged to clients provides "strong evidence of what the market will

bear" and collecting cases).

 At all times, Class Counsel used a small team of core attorneys in order to minimize

duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively. Miazad Decl. ¶ 75. In addition, Class Counsel's contemporaneous time records were carefully reviewed and duplicative work, as well as *de minimis* time billed by attorneys and staff who had little participation in the action, was removed (for example, Class Counsel proactively removed any attorneys or staff who worked less than five hours on this matter). *Id.* ¶ 76; Montag Decl. ¶ 25; Pope Decl. ¶ 14.

The requested fee, however, is not based solely on time and effort already expended. It is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. Miazad Decl. ¶ 77. In Class Counsel's experience, overseeing the final steps of the settlement process will require an ongoing substantial commitment. *Id.*; *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. 2013) ("Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund."); *Parker*, 2010 WL 532960, at *2 ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). Class Counsel anticipate that they will incur significant additional fees interacting with the settlement administrator and fielding Class Members' questions. Miazad Decl. ¶ 77. Class Counsel's lodestar will also grow as they continue to finalize the settlement process, prepare for the Fairness Hearing, and handle Class Member questions after approval. *Id.*

As outlined above and in the exhibits attached to the Miazad Declaration as Exhibit 4,

Class Counsel's time was spent on tasks necessary to the successful prosecution of this complex Title VII and NYCHRL class action. The lawyers involved in negotiating the settlement collectively have decades of experience with criminal record litigation and settlements, and all of that experience was brought to bear to achieve the results of this case. Even so, Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work.[5]

Accordingly, these factors support a finding that Class Counsel's fee request is reasonable.

> **2. The Magnitude and Complexity of this Litigation, and the Risk Class Counsel took in Prosecuting Plaintiffs' Civil Rights Claims, Warrant the Requested Attorneys' Fees (*Goldberger* Factors 2 and 3).**

The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100-01 (S.D.N.Y. 1996). Moreover, uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d at 49. "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Here, Class Counsel respectfully posit that they achieved excellent results in this complex case involving the equal and fair access to employment for individuals with criminal records,

---

[5]     It is standard practice for multiple lawyers to work on a case, particularly a class action and settlement of this scope and complexity, and to seek attorneys' fees. *See Planned Parenthood of Cent. N.J. v. Att'y Gen. of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002) (multiple fee awards appropriate because "magnitude of the case mandated the help of numerous attorneys for both Parties[]" and staffing was appropriate given "complexity and specialized medical knowledge necessary for the proper presentation of this case").

disproportionately Black and Latino, while risking the possibility of receiving nothing for their efforts. This settlement, which changed the application process for one of the country's largest retail employers, levels the playing field for applicants in New York City and gives them the opportunity to fairly compete for positions without being subjected to a discriminatory criminal background check screening process.

"Most civil rights class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). This case is no exception, with an organizational plaintiff, approximately 1,187 putative Class Members, and fact-intensive Title VII and NYCHRL claims involving the legality of a large, sophisticated retail corporation's job applicant screening processes. Miazad Decl. ¶ 52. While there is supporting case law for bringing and succeeding in Title VII disparate impact claims involving criminal background checks, *see, e.g.*, *Houser v. Pritzker*, 28 F. Supp. 3d 222 (S.D.N.Y. 2014), such claims are not without risk and often involve a fact-intensive inquiry and expert discovery.

Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Miazad Decl. ¶ 66. As shown by the history of this litigation and as discussed at length in Plaintiffs' Final Approval brief, civil rights cases of this type are, by their very nature, complicated, time-consuming, and subject to risk. Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in this case if it was unsuccessful. *Id.* In addition, when taking on this case, Class Counsel faced the risk that the Court would not certify

the Class, or would decertify it at the close of discovery after extensive discovery and briefing. In sum, both the complexity and magnitude of the instant claims, as well as the risk undertaken, support finding that Class Counsel's fees are reasonable.

### 3. The Requested Fees are Reasonable in Relation to the Settlement (*Goldberger* Factor 5).

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). Here, a fee of one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit." *Mohney*, 2009 WL 5851465 (collecting cases); *see also Hernandez*, 2013 WL 1209563, at *8 (awarding attorneys' fees of one-third of the settlement fund); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). In contrast to class settlements of hundreds of millions of dollars, a one-third award of attorneys' fees in this case would not be a windfall to Class Counsel. While courts sometimes apply a "sliding-scale" approach by lowering the percentage awarded in "megafund" cases in order to prevent a windfall to plaintiffs' attorneys, the $1,750,000.00 class fund in this case does not trigger such an issue. *See, e.g.*, *Hicks v. Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("A settlement amount of $10 million does not raise the windfall issue in the same way as would a $100 million settlement[.]").

Here, because courts in this Circuit have routinely granted requests for one-third of the fund in cases with settlement funds similar to this one, the size of the settlement weighs in favor of granting the requested fee award.

### 4.   Public Policy Considerations Support the Reasonableness of Class Counsel's Requested Fees (*Goldberger* Factor 6).

Public policy considerations also weigh in favor of granting Class Counsel's request.  In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999).  Courts have recognized that fee awards serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980).

Class actions are also an invaluable safeguard of public rights. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (many plaintiffs "would have no realistic day in court if a class action were not available"); *c.f. Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973) (noting that courts look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized").  An award of attorneys' fees ensures that plaintiffs' claims will be heard. *See Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions." *Id.*; *see also de Munecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8-9 (S.D.N.Y. Aug. 23, 2010) (same, citing cases); *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel").

With regard to Plaintiffs' state law claims, "[t]he public policy of [New York] state [and

City], as expressed in [the Correction Law], [is] to encourage the licensure and employment of persons previously convicted of one or more criminal offenses." N.Y. Corr. Law § 753(1)(a). Arbitrary barriers to entry in hiring because of conviction histories undermine and violate the City's clearly articulated policy. *See Beckman*, 293 F.R.D. at 477 (noting, in the wage and hour context, that "[w]here relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by 'private attorneys general,' attorneys who fill the private attorney general role must be adequately compensated for their efforts") (citing *Reyes*, 2011 WL 4599822, at *7)).

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. This settlement directly furthers the purpose of Title VII and the NYCHRL to remove arbitrary employment obstacles. Granting attorneys' fees pursuant to the fee-shifting provisions of Title VII and the NYCHRL recognizes the important public policy goals achieved through this litigation.

## III.    Class Counsel are Entitled to Reimbursement of Costs.

Counsel request reimbursement of $37,989 of their out-of-pocket expenses to be paid from the settlement fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citation and internal quotation marks omitted).

Here, Class Counsel's expenses were incidental and necessary to the representation of the class and are in line with costs charged to individual clients who pay out of pocket. Miazad Decl. ¶ 71. These expenses include mediation fees, court fees, expert analysis consulting fees, public relations consulting fees, website fees, postage, transportation, printing, copying,

electronic research, travel, meals, and messenger fees.  *Id.*; Ex. 3 (O&G Costs Summary).  Such

expenses and costs are routinely granted.  *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693,

2013 WL 5492998, at *11 (S.D.N.Y. Oct. 2, 2013) (approving reimbursement of class counsel's

expenses, "including court and process server fees, postage and courier fees, transportation,

working meals, photocopies, electronic research, expert fees, and plaintiffs' share of the

mediator's fees," finding that they were "reasonable and were incidental and necessary to the

representation of the class"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2012 WL

3878144, at *5 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (awarding

reimbursement of costs that included court reporter and document management fees).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully requests that the Court approve a

service award of $5,000 to Plaintiff Clark and the requested attorneys' fees and costs to Class

Counsel.

Dated:  November 24, 2020
           New York, New York

Respectfully submitted,

By:   /s/ Ossai Miazad

**OUTTEN & GOLDEN LLP**
Ossai Miazad
Lewis Steel
Chauniqua D. Young
Maya S. Jumper
Michael C. Danna
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**NAACP LEGAL DEFENSE
AND EDUCATIONAL FUND, INC.**
Rachel Kleinman
40 Rector Street, 5th Floor

New York, New York 10006

Coty Montag (admitted *pro hac vice*)
Jason Bailey (admitted *pro hac vice*)
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 216-5573

**YOUTH REPRESENT**
Michael Pope
Eric Eingold
Dale Ventura
11 Park Place, Suite 1512
New York, NY 10007
Telephone: (646) 759-8080

*Attorneys for Plaintiffs and the Class*