IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FORTUNE SOCIETY, INC., on behalf of itself and its participants, and MICHAEL CLARK, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MACY'S, INC., MACY'S RETAIL HOLDINGS, INC. d/b/a MACY'S, and MACY'S CORPORATE SERVICES, INC.,<br><br>Defendants. | Case No. 19-cv-05961-RA |

**DECLARATION OF COTY MONTAG IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS**

I, Coty Montag, declare under penalty of perjury as follows:

1. I am a Senior Counsel at the NAACP Legal Defense and Educational Fund, Inc. ("LDF") and Researcher for LDF's Thurgood Marshall Institute in Washington, DC.

2. Since its founding 80 years ago, LDF has fought for Black people to have employment opportunities without racially imposed barriers. LDF has litigated class action lawsuits against employers, unions, and government entities at all levels, including *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), to help secure jobs and employment rights for tens of thousands of individuals confronted by unfair employment practices.

3. LDF is well-versed in the impediments to employment that criminal records create, particularly for Black and Latinx job applicants and employees. For more than a decade, LDF has worked to combat discriminatory barriers facing people with criminal records. *See, e.g.*, *Mandala v. NTT Data, Inc.*, No. 18-06591 (W.D.N.Y. 2018) ("*NTT Data*"); *Times v. Target Corp.*, No. 18-

02993 (S.D.N.Y. 2018) ("*Times*"); *Little v. Washington Metro. Area Transit Auth.*, No. 14-01289 (D.D.C. 2014).

4. I am lead counsel for LDF in this case and one of the lawyers primarily responsible for litigating Plaintiffs' claims.

5. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

6. I received a Juris Doctor degree from the Georgetown University Law Center in 2005. I am a member in good standing of the state bars of Maryland (admitted 2005), the District of Columbia (admitted 2006), and California (admitted 2008). I am also admitted to practice law in the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits, and the United States Supreme Court.

7. From 2005 to 2007, I worked as an associate at the law firm of Dickstein Shapiro LLP in Washington, DC, specializing in antitrust litigation. During my time at Dickstein Shapiro, I drafted motions and legal memoranda, defended depositions, and conducted legal research.

8. In 2007, I joined the firm of Robbins Geller Rudman & Dowd LLP in San Diego, California. The firm exclusively represents plaintiffs in securities and consumer class action litigation. During my time at the firm, among other cases, I litigated a series of federal class action lawsuits on behalf of Black and Latino borrowers against the nation's largest banks for violations of the Fair Housing Act ("FHA") and the Equal Credit Opportunity Act. I also worked on litigation related to antitrust, insurance, consumer protection, and securities fraud litigation on behalf of individual and institutional plaintiffs. During my time at Robbins Geller, I drafted pleadings, motions, and legal memoranda; appeared at hearings in federal and state court; conducted and

defended depositions; prepared and responded to written discovery; negotiated with opposing counsel regarding settlement issues and demands; and managed e-discovery teams in document review and production.

9. In 2010, I joined the Civil Rights Division of the United States Department of Justice as a Trial Attorney in the Housing and Civil Enforcement Section in Washington, DC. In 2013, I was promoted to Deputy Chief. During my time at the Justice Department, I investigated and litigated a wide range of civil rights violations involving housing and lending issues. I served as counsel in 12 cases that were filed in federal district court, including *United States v. Ally Financial Inc.*, No. 13-15180 (E.D. Mich. 2013), the government's largest-ever auto discrimination settlement; *United States v. Synchrony Bank,*, No. 14-00454 (D. Utah 2014), the government's largest-ever credit card discrimination settlement; and *United States v. Wells Fargo Bank*, No. 12-01150 (D.D.C. 2012), a major fair lending investigation resulting in a $234.3 million settlement. In 2013, I received the Attorney General's Distinguished Service Award, the highest award for Justice Department employees.

10. In 2015, I joined LDF as the Deputy Director of Litigation. Until 2018, I supervised LDF's legal staff in their litigation, advocacy, and public education activities. Specifically, I supervised LDF's economic justice docket, which includes employment, housing, lending, and environmental discrimination matters, and participated in the strategic development of LDF's organizational resources and administration.

11. Since 2018, I have served as a Senior Counsel at LDF and have also worked in LDF's Thurgood Marshall Institute, first as Project Manager and now as Researcher. As Senior Counsel, I serve as lead counsel for LDF in numerous economic justice matters, including in *Pickett v. City of Cleveland*, No. 19-02911 (N.D. Ohio 2019), challenging the City of Cleveland's

water lien policy as discriminatory under the FHA, and *Taylor v. City of Detroit*, No. 20-11860 (E.D. Mich. 2020), challenging the City of Detroit's water shutoff policy under the FHA and other causes of action. I was also lead counsel for LDF in *Times*, challenging Target's criminal background check policy as discriminatory under Title VII of the Civil Rights Act of 1964 ("Title VII").

12.    Other experienced litigators from LDF have also worked on this case. Rachel Kleinman is Senior Counsel, Director of Professional Development at LDF, where she has worked since 2011. She graduated from Fordham Law School in 2005 and since that time has worked on dozens of civil rights matters, including in the area of criminal records discrimination. Ms. Kleinman was approved as class counsel while serving as lead counsel for LDF in *Little*, 249 F. Supp. 3d 394, 422 (D.D.C. 2017). Ms. Kleinman is currently counsel for a putative class in *NTT Data*, a criminal records discrimination case currently on appeal to the Second Circuit Court of Appeals. Ms. Kleinman also co-authored LDF's amicus brief in *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015), in which the Supreme Court recognized the legality and importance of the disparate impact protections set forth by the FHA in addressing housing discrimination.

13.    Jason Bailey, Special Economic Justice Counsel at LDF, has also worked on this case. Mr. Bailey graduated *magna cum laude* from the University of Arkansas School of Law in 2015. Upon graduation, Mr. Bailey joined the Lawyers' Committee for Civil Rights Under Law as an Equal Justice Works Fellow. Following his fellowship, Mr. Bailey served as a law clerk for Chief District Judge Susan Hickey at the U.S. District Court for the Western District of Arkansas from 2016 to 2018. Mr. Bailey served as a Trial Attorney at the U.S. Equal Employment Opportunity Commission's ("EEOC") Memphis District Office from 2018 to 2019. Mr. Bailey has

experience litigating civil rights cases, including employment discrimination cases at the EEOC. *See, e.g.*, *Equal Emp't Opportunity Comm'n v. A Plus Care Solutions, Inc.*, No. 18-01188 (W.D. Tenn. 2018) (class pregnancy discrimination); *Equal Emp't Opportunity Comm'n v. Magneti Marelli of Tennessee, LLC*, No. 18-00074 (M.D. Tenn. 2018) (class sexual harassment). Mr. Bailey joined LDF in 2019 and has assisted in investigating and litigating numerous economic justice cases since then.

14. Sparky Abraham was an Economic Justice Fellow at LDF from 2018 to 2019. Mr. Abraham graduated from Yale Law School in 2014. After law school, Mr. Abraham served as an Equal Justice Works Fellow at Housing and Economic Rights Advocates in Oakland, California. Prior to joining LDF, he was an Honors Attorney in the Office of Enforcement at the Consumer Financial Protection Bureau in Washington, DC, where he investigated violations of federal consumer financial laws. During his fellowship at LDF, Mr. Abraham participated in the investigation and initial litigation related to this case. He also assisted in investigating *Pickett*, challenging water liens and shutoffs in Cleveland under the FHA and investigated other civil rights matters. Mr. Abraham drafted several amicus briefs filed in various appellate courts and the Supreme Court during his time at LDF.

15. Catherine Blalock is a paralegal at LDF. Ms. Blalock graduated from the University of North Carolina at Chapel Hill in 2017 and joined LDF in 2018. Ms. Blalock has served as the paralegal for several matters in active litigation at LDF, including at trial. Ms. Blalock has served as the paralegal for this case since 2018 and assisted in compiling the time records that are attached to this declaration.

16. Throughout its long history, LDF has litigated numerous employment class action cases, including *Lewis v. City of Chicago*, 560 U.S. 205 (2010); *Cooper v. Fed. Reserve Bank of*

*Richmond*, 467 U.S. 867 (1984); *Franks v. Bowman Transp. Co.*, 424 U.S. 747 (1976); and *Griggs*, 401 U.S. 424.

17. Courts have found LDF to be adequate class counsel in employment class actions, including in cases challenging criminal background check policies. *See*, *e.g.*, *Little*, 249 F. Supp. 3d at 422 (Collyer, J.) (recognizing class counsel, which included LDF, as adequate in a Title VII challenge to employer's use of criminal background checks, and noting that "class counsel are experienced in class actions and other complex litigation"); *Wright v. Stern*, 553 F. Supp. 2d 337, 346 (S.D.N.Y. 2008) (Chin, J.) (commending class counsel, which included LDF, in employment discrimination case); *Times*, 2019 WL 5616867 at *4-5 (S.D.N.Y. Oct. 29, 2019) (Freeman, J.) (recognizing LDF and Outten & Golden, LLP as experienced class action and employment lawyers with good reputations among the class action and employment bars and significant experience in litigating criminal history discrimination matters).

18. In 2018 and 2019, LDF and co-counsel Outten & Golden and Youth Represent (collectively, "Plaintiffs' Counsel") worked diligently to investigate the hiring practices of Defendants Macy's, Inc.; Macy's Retail Holdings, Inc. n/k/a Macy's Retail Holdings, LLC; and Macy's Corporate Services, Inc. n/k/a Macy's Corporate Services, LLC (collectively, "Defendants") related to their use of applicants' and employees' criminal histories to screen and exclude them from obtaining and/or continuing employment.

19. On June 26, 2019, Plaintiffs filed a class action complaint in this Court, alleging that Defendants violated Title VII and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, by using applicants' and employees' criminal histories to screen and exclude them from obtaining and/or continuing employment at Macy's and by failing to weigh the factors outlined in Article 23-A of the Correction Law, in violation of N.Y.C. Admin Code § 8-107(10)

and New York State Correction Law § 753. Plaintiffs also alleged that Defendants violated the Fair Chance Act, N.Y.C. Admin. Code § 8-107(11-a)(3), by inquiring into the criminal histories of applicants prior to extending a conditional offer of employment. On September 30, 2019, Plaintiffs filed the Third Amended Complaint, adding a Fair Chance Act claim on behalf of Plaintiff Michael Clark and a putative class of similarly situated job applicants against Defendants.

20. Plaintiffs' Counsel have done substantial work litigating, negotiating, and settling Plaintiffs' and putative class members' claims. Plaintiffs' Counsel regularly met and communicated with organizational Plaintiff The Fortune Society and individual Plaintiff Clark to understand the challenges imposed by Defendants' criminal background check policies.

21. The Parties began to explore settlement in fall 2019 and exchanged substantial documents and information. On January 10, 2020, counsel for Plaintiffs and Defendants (the "Parties") attended a mediation in Atlanta, Georgia with Hunter R. Hughes, a mediator with experience in the mediation of complex class actions, including employment discrimination litigation. Following the mediation, the Parties continued to negotiate the terms of a settlement with the assistance of Mr. Hughes and exchanged multiple drafts of a proposed term sheet. The term sheet was finalized and executed on July 6, 2020. The full settlement agreement was executed by the Parties on August 31, 2020.

22. I have reviewed the declaration of my co-counsel at Outten & Golden, Ossai Miazad, which is being filed contemporaneously with my declaration today.

23. In the "Factual and Procedural Background" section of her declaration, Ms. Miazad describes various aspects of this case, including "Pre-Suit Outreach," "Overview of Litigation," "Settlement Negotiations," "Notice of Settlement to Class Members," "Settlement Agreement," "Plaintiff Clark's Efforts in the Success of the Case," and "Attorneys' Fees and Costs." I have

reviewed each of the paragraphs in those portions of Ms. Miazad's declaration and adopt each of them as my own. The portions of Ms. Miazad's declaration referring to the work Plaintiffs' Counsel undertook in this case are accurate and describe the work that I performed in this case. I also concur with the statements made by Ms. Miazad concerning the complexity of this case, the costs and risks of prosecuting this litigation, and this settlement being in the best interests of class members.

24. Through the date of this filing, LDF has spent approximately 267.9 hours investigating, litigating, and settling this case. LDF's work on this case, which dates back to 2018, includes, but is not limited to: legal research; drafting of internal memoranda; investigation of claims, including reviewing Macy's' policies; litigating Plaintiffs' claims, including drafting the Complaint and opposition to Macy's' motion to dismiss; preparation for and participation in mediation and settlement discussions; drafting of the settlement documents; preparing communications materials for the lawsuit and settlement filing; monitoring the settlement; and conferring with Outten & Golden and Youth Represent.

25. LDF's rates have been used by the organization and approved by courts when seeking fees in federal civil rights litigation and are based on the fee matrix provided by the U.S. Attorney's Office for the District of Columbia. LDF only seeks fees for attorneys and staff who worked more than five hours on this case. Multiplying the hours expended on this case by the hourly rate of each attorney and paralegal results in a lodestar amount of approximately $129,429.20.

26. The hours LDF has incurred are reasonable for a case like this one and were compiled from contemporaneous time records maintained by each relevant staff member. I will provide upon the Court's request copies of LDF's contemporaneous time records for attorneys and

staff who investigated and litigated this action from October 2018 to November 2020. For the Court's convenience, LDF has submitted a summary of those time records as Exhibit A to this Declaration.

27.     LDF also incurred out-of-pocket expenses associated with investigating and settling this case, including court costs and travel. LDF's out-of-pocket expenses in this case total $1,579.77. A breakdown of these expenses is attached as Exhibit B to this declaration.

Dated:   November 24, 2020
         Washington, DC

Respectfully submitted,

By: *[signature]*

Coty Montag
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
700 14th Street NW, Suite 600
Washington, DC 20005
cmontag@naacpldf.org
Tel.: (202) 682-1300